456 F.2d 410
 In the Matter of MARYVALE COMMUNITY HOSPITAL, INC., an
Arizona corporation, Debtor.
HEALTH FACILITIES PLANNING COUNCIL, an Arizona nonprofit
corporation, Appellant,
v.
Frank J. DUNNING, as Trustee of the Estate of said Debtor, Appellee.
Gary K. NELSON, the Attorney General of the State of
Arizona, Appellant,
v.
Frank J. DUNNING, as Trustee of the Estate of said Debtor, Appellee.
 Nos. 25586, 25587.
 United States Court of Appeals,
Ninth Circuit.
 Feb. 11, 1972.
Rehearing Denied April 20, 1972.
 
 Edward Lewis (argued), of Lewis & Roca, Phoenix, Ariz., for appellant Health Facilities Planning Council.
 Frank Sagarino, Asst. U. S. Atty. (argued), for appellants State of Ariz., and Gary K. Nelson, Ariz. Atty. Gen.
 Herbert Mallamo (argued), Robert G. Mooreman, Phoenix, Ariz., for appellee Dr. Bratrud.
 Before ELY and HUFSTEDLER, Circuit Judges, and FERGUSON,* District Judge.
 PER CURIAM:
 
 
 1
 These are two consolidated appeals from an order of the district court approving the trustee's plan of reorganization for Maryvale Community Hospital, Inc., as fair and equitable, and feasible, as provided in Section 174 of Chapter X of the Bankruptcy Act (11 U.S.C. Sec. 574). We affirm.
 
 
 2
 The hospital was incorporated under the Arizona non-profit corporation laws on December 2, 1959, as a non-stock membership corporation. On July 12, 1961, its articles of incorporation were amended to provide specifically that upon dissolution the assets of the corporation would be distributed to a religious, charitable or educational organization.
 
 
 3
 The promoters, in order to finance construction of the hospital, sold $3,237,000 of eight percent first mortgage bonds from January, 1959, through June, 1962, to 1,359 persons. The bonds were issued pursuant to an indenture of mortgage and deed of trust entered into between the hospital corporation and a title and trust company.
 
 
 4
 In August of 1961 the hospital was completed and commenced operations. About a year later, the bonds became in default in certain principal, interest and sinking fund payments.
 
 
 5
 In May, 1963, certain bondholders brought a class action in the district court against the hospital promoters for fraud. In 1966, that action was terminated by a settlement whereby the promoter defendants paid the sum of $100,200 to the Chapter X trustee who had joined the action as a party.
 
 
 6
 On July 31, 1963, the indenture trustee filed an action in the Arizona state court seeking an accounting and the appointment of a receiver. The next day five of the bondholders filed an involuntary petition for reorganization of the hospital corporation under Chapter X of the Bankruptcy Act. The proceeding was held in abeyance pending the state court receivership. On November 26, 1963, the state court action was dismissed and a receiver was appointed, pursuant to Section 117 of Chapter X, to hold and protect the debtor's assets pending approval or dismissal of the Chapter X petition. On May 11, 1964, the district court approved the petition and appointed a trustee for the purpose of rehabilitating and reorganizing the debtor hospital corporation as a going concern.
 
 
 7
 The hospital then progressed from a condition of insolvency to become a profitable institution. In August, 1968, after various plans for reorganization were presented to and considered by the Chapter X trustee, the district court approved the sale of the debtor's assets to Good Samaritan Hospital for the cash price of $5,110,000, plus the assumption of certain outstanding contingent liabilities. The sale was made pursuant to Section 116(3) of Chapter X.
 
 
 8
 While this plan was being considered by the court, the State of Arizona was permitted to intervene as amicus curiae. The Health Facilities Planning Council, an Arizona nonprofit corporation, was permitted to intervene under Rule 24 of the Federal Rules of Civil Procedure. The State and the Health Council assert an interest in the distribution of the debtor's funds pursuant to the Arizona nonprofit corporation laws to the extent of any sums in excess of those owed to the bondholders. By reason of the affirmance on the merits of the order of the district court, we do not decide whether the appellants have standing to object in the district court or to appeal.
 
 
 9
 Several months after the sale was approved, the district court determined that the bondholders were the only creditors of the debtor, and directed the trustee to prepare a plan for distribution of the proceeds from the sale.
 
 
 10
 The trustee submitted a plan for distribution, and it was approved by the court. The plan provided that the total amount owed to the bondholders under the indenture, computed as of October 22, 1968, the date of sale, was the sum of $5,054,680 plus the $100,200 recovered against the promoters in settlement of the fraud action, for a total of $5,154,880, which is in excess of the amount available for distribution of approximately $4,874,000.
 
 
 11
 The bondholders' claims under the terms of the indenture computed by the indenture trustee and approved by the Chapter X trustee and the district court are:
 
 
 12
 Principal amount $3,236,900
Simple interest at 8% 1,758,704
Interest on interest at 8% 438,082
Prepayment premiums 219,820
 ----------
 $5,653,506
Less:
 Interest paid during course of proceedings 599,826
 ----------
 NET CLAIM $5,054,680
 
 
 13
 The State and the Health Council object to the plan of distribution on the grounds: (1) it permits the payment of interest on interest; (2) it permits the semiannual compounding of interest on interest; (3) it permits a prepayment on call premiums, and (4) it distributes the settlement proceeds to the bondholders. The monetary value of the objections is:
 
 
 14
 Interest on interest $438,082
Prepayment premiums 219,820
Settlement proceeds 100,200
 --------
 $758,102
 
 
 15
 With reference to that part of the plan which provides for the payment of interest on interest to be compounded semi-annually, the bonds contain the provision "[t]hat Maryvale Community Hospital, Inc. . . . hereby promises to pay . . . [the principal sum] . . . and to pay interest on said principal sum . . . at the rate of eight percent (8%) per annum, such interest to be payable . . . semi-annually . . . until the principal sum hereof shall have become due and payable". Section 6.2 of Article VI of the trust indenture provides: "Upon the occurance of any . . . default the Corporation . . . shall pay to the Trustee . . . all sums then . . . due . . . with interest at the rate of eight percent (8%) per annum on overdue interest and principal . . . ."
 
 
 16
 The bondholders clearly have a contractual right to receive interest on interest compounded semiannually. However, in Chapter X reorganization proceedings, even though a claimant may have a valid contractual claim, equitable considerations must control their allowance. "It is manifest that the touchstone of each decision on allowance of interest in bankruptcy, receivership and reorganization has been a balance of equities between creditor and creditor or between creditors and the debtor." Vanston Bondholders Protective Committee v. Green, 329 U.S. 156, 165, 67 S.Ct. 237, 241, 91 L.Ed. 162 (1946). In Vanston, although a first mortgage indenture provided for the payment of interest on interest, the court directed that it not be paid because it was not justified by "an application of equitable principles", 329 U.S. at 165, 67 S.Ct. 237, because there the "first mortgage bondholders would have been enriched and subordinate creditors would have suffered a corresponding loss, because of a failure to pay when payment had been prohibited by court order entered for the joint benefit of debtor, creditors, and the public". 329 U.S. at 166, 67 S.Ct. at 242.
 
 
 17
 The district court held that based upon equitable considerations the contractual rights of the bondholders should prevail over whatever rights the State and the Planning Council may have as possible non-investor contingent beneficiaries. The bondholders are the only creditors of the debtor hospital corporation. Appellants are neither creditors nor stockholders, and have been characterized by the district court as "residual legatees". In re Maryvale Community Hospital, Inc., 307 F.Supp. 304, 309 (D.Ariz.1969). "Were it not for the bondholders providing the money for the Hospital in the first instance, there would be no hospital. Were it not for the bondholders bringing suit, there would have been no reorganization, the creditors would never have received full satisfaction of the debts, and the State and the 'health consumers' would not have had the present and future benefit of an active and functioning hospital". (Footnote omitted.) 307 F.Supp. at 310. In summary, we concur with the district court that the balancing of the equities supports the payment to the bondholders of the interest payments to which they are entitled under their contractual rights.
 
 
 18
 The contractual rights of the bondholders to interest on interest does not amount to the enforcing of a penalty. Appellants cite In re Tastyeast, Inc., 126 F.2d 879 (3rd Cir. 1942), cert. denied, Modern Factors Co. v. Tastyeast, Inc., 316 U.S. 696, 62 S.Ct. 1291, 86 L.Ed. 1766 (1942), and In re Black Ranches, Inc., 362 F.2d 8 (8th Cir. 1966), cert. denied, Black v. Strand, 385 U.S. 990, 87 S.Ct. 595, 17 L.Ed.2d 450 (1966). Neither case supports appellants' contention regarding a penalty. In Tastyeast, the court refused to enforce unconscionable terms imposed by a lender. There a six-months loan with interest prepaid at 21% called for the interest rate to be increased to 30% upon default. The court held that the increase in interest was coercive. The indenture provisions here providing for interest on interest have a direct relationship to the loss of the opportunity of the bondholders timely to receive simple interest. In Black Ranches, the court held that payment of an increased rate of interest following a default in simple interest payments did not constitute a penalty.
 
 
 19
 In addition, the appellants claim that the payment of interest upon overdue interest over and above eight percent (8%) simple interest is usurious under Arizona law. With certain exceptions not applicable here, interest in excess of eight percent per annum at the time the indenture was made was usurious in Arizona. However, the Arizona Supreme Court has specifically held that the compounding of interest pursuant to an agreement in advance by the parties is not a violation of its usury laws, Greer v. Greer, 56 Ariz. 394, 108 P.2d 398 (1940), even if compounded more frequently than on an annual basis, Fagerberg v. Denny, 57 Ariz. 179, 112 P.2d 578 (1941), so long as the agreement is not intended to defeat the usury laws. As there is absolutely no evidence that the agreement here was designed to defeat the Arizona usury laws, we hold that the agreement is valid under Arizona law.
 
 
 20
 The appellants claim that to award the bondholders the $100,200 settlement which was received as the result of the bondholders' class action would be unfair and inequitable. In that action the plaintiff bondholders claimed that they were induced to purchase the bonds by fraudulent representations of the hospital promoters. Appellants cite no authority for their contention. However, it is clear that there are no countervailing equities which should deprive the bondholders of the benefit of the settlement. The settlement was a recognition of economic injury which the bondholders sustained by reason of fraud, and it would be inequitable to deprive them of their damages. Any contrary ruling would have the effect of tending to discourage fraud actions in the sale of securities. See Ellis v. Carter, 291 F.2d 270 (9th Cir. 1961); Fratt v. Robinson, 203 F.2d 627 (9th Cir. 1953).
 
 
 21
 With reference to the prepayment premiums in the sum of $219,820, the indenture provides in Sections 4.1 and 4.2 of Article IV that all bonds which are outstanding may be called for redemption and payment prior to their due date upon the payment of a premium based upon the time of redemption. The plan of distribution approved by the district court provides for such a premium. The appellants and the Securities and Exchange Commission, which has been actively participating as a party to the reorganization proceeding pursuant to Section 208 of Chapter X, contend that the payment of the prepayment premium would not be equitable because there is no obligation to pay it in this situation under the terms of the indenture.
 
 
 22
 However, we decline to decide the precise issue for the reason that under the terms of the distribution plan, which this opinion approves, the amount distributable to the bondholders as principal, simple interest, interest on interest, and the settlement, exceeds the amount available for distribution by approximately $60,000. A determination of the call premium issue is not necessary for the resolution of the litigation.
 
 
 23
 The order of the district court is affirmed with the caveat set forth above with reference to the call premium issue.
 
 
 
 *
 Honorable Warren J. Ferguson, United States District Judge, Central District of California, sitting by designation