NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

DIANA R., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, I.E., *Appellees*.

No. 1 CA-JV 14-0124
FILED 12-18-2014

---

Appeal from the Superior Court in Maricopa County
JD21343
The Honorable Linda H. Miles, Judge

**AFFIRMED**

---

COUNSEL

Maricopa County Public Advocate's Office, Mesa
By Suzanne Sanchez
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Erika Z. Alfred, Tucson
*Counsel for Defendant/Appellee*

---

## MEMORANDUM DECISION

---

Judge Maurice Portley delivered the decision of the Court, in which Presiding Judge Patricia A. Orozco and Judge Randall M. Howe joined.

---

**P O R T L E Y**, Judge:

**¶1**          Diana R. ("Mother") appeals the order terminating her parental rights to her child, I.E.  She argues that the termination should be reversed because:  (1) the juvenile court erred in determining that the Arizona Department of Economic Security[1] ("the Department") proved the statutory basis for termination; and (2) the juvenile court erred in finding that termination was in the best interests of the child. For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

**¶2**          I.E. was born premature in 2011, and Mother tested positive for methamphetamines.  After the child was released from the hospital, the Department placed him in a medical foster home to address his cerebral palsy, hydrocephalus, and serious food and environmental allergies.   The Department filed a dependency petition against Mother and Oscar E. ("Father") in January 2012 and the juvenile court subsequently found I.E. dependent as to both parents.

**¶3**          The Department then provided myriad services designed to help Mother attempt to meet the case plan of family reunification.  Initially, Mother lied about her drug use and tested positive for drugs.  She, however, began to improve and tested clean, but Father continued to test positive.  As a result, the juvenile court approved changing the case plan to termination and adoption, and the Department filed a motion to terminate Mother's parental rights based on the fact that the child had been in an out-of-home placement for fifteen months or longer.

---

[1] The Department of Child Safety ("DCS") has replaced the Arizona Department of Economic Security.  Because this case preceded the creation of DCS, we will refer to the Department as the agency prosecuting this case. *See* S.B. 1001, 51st Leg., 2d Spec. Sess. (Ariz. 2014).

**¶4** The severance trial proceeded even though Mother left Father, and the juvenile court determined the Department had met its burden of proof and terminated Mother's parental rights. Mother filed this appeal.[2] We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 8-235(A), 12-120.21(A), and -2101(A)(1).[3]

## DISCUSSION

**¶5** We review a judgment terminating parental rights for abuse of discretion. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8, 83 P.3d 43, 47 (App. 2004). We view the facts in the light most favorable to upholding the juvenile court's order. *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7, 225 P.3d 604, 606 (App. 2010). The court is in the "best position to weigh the evidence, judge the credibility of the parties, observe the parties, and make appropriate factual findings." *Bennigno R. v. Ariz. Dep't of Econ. Sec.*, 233 Ariz. 345, 351, ¶ 31, 312 P.3d 861, 867 (App. 2013) (citation and internal quotation marks omitted). As a result, we review the court's findings of fact for clear error and will accept the court's findings of fact unless no reasonable evidence supports those findings. *Raymond F. v. Ariz. Dep't of Econ. Sec.*, 224 Ariz. 373, 376, ¶ 13, 231 P.3d 377, 380 (App. 2010); *see Lashonda M. v. Ariz. Dep't of Econ. Sec.*, 210 Ariz. 77, 81, ¶ 13, 107 P.3d 923, 927 (App. 2005).

### I. Statutory Grounds

**¶6** Mother argues that the juvenile court abused its discretion by terminating her parent-child relationship because she had remedied the circumstances causing his out-of-home placement. She contends that she was capable of caring for I.E.'s special needs and had a plan for caring for him if he was returned to her custody.[4]

**¶7** A parent's rights can be terminated if their child has been in an out-of-home placement for fifteen months or more, "the parent has been unable to remedy the circumstances that cause the child to be in an out-of-

---

[2] Father's parental rights were also terminated, but he is not a party to this appeal.

[3] We cite to the current version of the statute unless otherwise noted.

[4] Mother did not challenge the finding that the Department made a diligent effort to provide her with appropriate reunification services or that I.E. had been in an out-of-home placement for at least fifteen months. She therefore has conceded the accuracy of these findings on appeal. *See Britz v. Kinsvater*, 87 Ariz. 385, 388, 351 P.2d 986, 987 (1960).

home placement[,] and there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future." A.R.S. § 8-533(B)(8)(c). The "circumstances that cause the child to be in an out-of-home placement" are the circumstances existing at the time of the severance rather than at the time of the initial dependency petition. A.R.S. § 8-533(B)(8)(a).

¶8 In ruling on the termination motion, the juvenile court concluded that the evidence demonstrated that I.E., who had serious medical and developmental needs, needed "more than a minimally adequate parent due to his chronic medical needs." Although Mother was testing clean and had remedied her substance abuse, the evidence revealed that she did not fully understand I.E.'s special needs, did not appreciate the seriousness of his allergies, had been inconsistent in attending I.E.'s appointments, and had not developed a viable child care plan while she worked.

¶9 Brad Pasternak, M.D., I.E.'s pediatric gastroenterologist, testified that he tried to get Mother to appreciate that it was important for I.E. to get the appropriate amount of specialized formula, as well as proper and adequate fluid intake for nutrition and weight gain, to avoid the risk of malnutrition. Mother, however, had admitted that during her supervised visits she had been giving I.E. less than the required amount of formula despite the fact that the foster mother clearly marked the formula can with the appropriate number of required scoops. Her refusal to follow the basic instructions during supervised visits reinforces the concern that she would not meet I.E.'s needs if he was returned to her.

¶10 The evidence also reflected that Mother does not fully appreciate the seriousness of I.E.'s allergies and the importance of carrying his epinephrine pen at all times. Despite being advised about his potential for anaphylactic reactions to his allergies, she took him on a walk without the epinephrine pen during a supervised visit. Moreover, although she claimed that her fear of needles would not interfere with her ability to administer the epinephrine pen, she was unable to hold or comfort I.E. as he had his blood drawn in December 2013 and had to be coaxed to practice using the pen during a training session in February 2014. Further, Mother has been inconsistent in attending I.E.'s various medical appointments, had not met all of her parent aide services goals, and had not formulated a plan for meeting I.E.'s special needs if he were returned to her care.

¶11 Although Mother did some things well, the evidence about her actions and behavior demonstrate that she remains unable to effectively and appropriately parent her medically fragile child and, as the psychologist testified, there is a substantial likelihood that she will not be "able to parent in the foreseeable future." Because there is evidence to support the juvenile court's determination that the Department had proven the statutory basis for termination, we find no abuse of discretion.

## II. Best Interests

¶12 Mother contends that the juvenile court erred by finding that termination was in the child's best interests. She contends that she was able to effectively parent him and they shared a strong bond. We disagree.

¶13 Best interests to support termination must be found by a preponderance of the evidence. A.R.S. § 8–533(B); *Kent K. v. Bobby M.,* 210 Ariz. 274, 284, ¶ 22, 110 P.3d 1013, 1018 (2005). Best interests can be demonstrated by evidence showing "an affirmative benefit to the child by removal or a detriment to the child by continuing in the relationship." *Jesus M. v. Ariz. Dep't. of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 14, 53 P.3d 203, 207 (App. 2002) (citation and internal quotation marks omitted); *see Bennigno R.*, 233 Ariz. at 350, ¶ 23, 312 P.3d at 866 (recognizing factors that favor a finding that termination is in the best interests of the child include: (1) whether an adoption plan exists; and (2) whether the placement meets the needs of the child).

¶14 Here, the case manager testified that termination was in the child's best interests. Specifically, she testified that I.E. was adoptable and his therapeutic foster home was ready to adopt him, the therapeutic foster parents could properly care for his special needs and had an emotional attachment with I.E., and termination would provide I.E. with much needed stability, structure, and permanency because "he has extensive medical needs that the placement is able to meet and is willing to meet and is able to provide a stable and loving home for him." The case manager also testified that I.E. could be harmed if parental rights were continued because Mother could not provide permanence, stability, or security.

¶15 In addition to finding that I.E. had formed a secure attachment with his foster parents, who were willing and able to meet his special needs, the juvenile court also found that termination would "enable [him] to achieve permanency through adoption in this loving, stable, drug-free home." Because the evidence supports the juvenile court's best interests finding, we find no abuse of discretion.

## CONCLUSION

**¶16** Based on  the foregoing, we affirm the judgment terminating Mother's parental rights to I.E.



Ruth A. Willingham · Clerk of the Court
F I L E D : gsh