NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

JEAN K., *Appellant*,

*v.*

JEREMY M., J.K., *Appellees*.

No. 1 CA-JV 16-0166
FILED 12-1-2016

---

Appeal from the Superior Court in Maricopa County
No. JS517359
The Honorable Rodrick J. Coffey, Judge

**AFFIRMED**

---

COUNSEL

Vierling Law Offices, Phoenix
By Thomas A. Vierling
*Counsel for Appellant*

Law Office of Anne M. Williams, P.C., Mesa
By Anne M. Williams
*Counsel for Appellee Jeremy M.*

---

**MEMORANDUM DECISION**

Judge Christopher T. Whitten[1] delivered the decision of the Court, in which Presiding Judge Kent E. Cattani and Judge Lawrence F. Winthrop joined.

---

**W H I T T E N**, Judge:

¶1 Jean K. ("Mother") appeals the juvenile court's order terminating her parental rights to her daughter, J.K. ("Child"). Mother argues there is insufficient evidence to support the court's best interests finding. For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2 Child, born in February 2006, is the biological child of Mother and Jeremy M. ("Father"). When Child was five years old, the Department of Child Safety ("DCS") took custody of her and began a dependency action, which was later dismissed upon Father taking custody in December 2011. Mother was incarcerated shortly after the dependency was initiated for failure to pay court ordered child support arrears related to her other children. Mother was also convicted of possession of drug paraphernalia, was incarcerated at the time of the initial severance trial in 2015, and had a hold for failure to appear in a Glendale matter. Mother was in and out of custody from 2011 through 2015.

¶3 While on release in September 2012, Mother filed a petition to modify her parenting time. The court granted the petition, awarded Mother supervised parenting time, ordered her to participate in six months of urinalysis testing, and appointed a mental health expert to provide reunification therapy for Mother and Child.

¶4 Mother only provided one clean urinalysis and, although she sought two visits with Child in August 2013, the visits were cancelled at Mother's request. Mother was in and out of custody multiple times from 2011 through 2015.

---

[1] The Honorable Christopher T. Whitten, Judge of the Arizona Superior Court, has been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

¶5        Father filed a petition for termination of Mother's parent-child relationship in June 2014, alleging that Mother abandoned Child by failing to have regular contact with Child for more than six months, and that terminating Mother's parental rights was in Child's best interests.

¶6        Both Father and Child are enrolled members of the Navajo Nation.  The juvenile court, however, concluded that the Indian Child Welfare Act ("ICWA"), 25 U.S.C. § 1903(1) (2012), did not apply after a contested severance hearing took place in April 2015.  Severance was granted and Mother appealed the juvenile court's order, arguing that the juvenile court's finding that ICWA was inapplicable was "clearly erroneous."  The parents ultimately agreed and this court on appeal held that the termination proceeding was subject to ICWA.  Therefore, the matter was remanded for a new termination proceeding to address ICWA.

¶7        A second contested severance hearing to address ICWA took place in February and March 2016.  Father had testified at the April 2015 contested severance hearing that Mother had essentially abandoned Child by not maintaining meaningful contact since August 2011.  At the second hearing, Richard England, an Indian Child Welfare expert witness and licensed clinical social worker for the Navajo Nation, testified that severance was in Child's best interests.  England opined that it would be in Child's best interests if Mother's rights were terminated because Child was adoptable, and Mother's continued relationship with Child would cause emotional harm to Child given Mother's continued drug abuse and incarcerations.  He also testified that termination would be beneficial because it would allow Child to be exposed to Indian culture, heritage, and upbringing, and it would positively impact Child's development.

¶8        In April 2016, the juvenile court found by clear and convincing evidence that termination was appropriate pursuant to A.R.S. § 8-533(B)(1).  The court also found termination was in Child's best interests under the statutory scheme and ICWA's heightened standard.  Mother has timely appealed the final signed judgment, and we have jurisdiction pursuant to A.R.S. § 8-235.

## ISSUE

¶9        Mother challenges the juvenile court's best interests findings, arguing that the juvenile court erred as a matter of law in terminating her parental rights.

**DISCUSSION**

¶10        ICWA requires a state court to make two particular findings before terminating the parental rights of an Indian child.  The court must be persuaded that "active efforts have been made to provide remedial services and rehabilitative programs designed to prevent the breakup of the Indian family and that these efforts have proved unsuccessful." *Valerie M. v. Ariz. Dep't of Econ. Sec.*, 219 Ariz. 331, 333, ¶ 3, 198 P.3d 1203, 1205 (2009) (quoting 25 U.S.C. § 1912(d)).  There must also be a determination that is supported by evidence beyond a reasonable doubt, including testimony of a qualified expert witness, "that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." *Id.* (quoting 25 U.S.C. § 1912(f)).

¶11        To justify termination of parental rights, the juvenile court must find at least one statutory ground is supported by clear and convincing evidence. *Linda V. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 76, 78, ¶ 6, 117 P.3d 795, 797 (App. 2005).[2]  Additionally, the juvenile court must find by a preponderance of the evidence that the termination is in the best interests of the child. *Mario G. v. Ariz. Dep't of Econ. Sec.*, 227 Ariz. 282, 285, ¶ 11, 257 P.3d 1162, 1165 (App. 2011); *see* A.R.S. § 8-533(B).  As the trier of fact, the juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4, 100 P.3d 943, 945 (App. 2004), and we will affirm a severance order unless it is clearly erroneous. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 250, ¶ 20, 995 P.2d 682, 686 (2000).  Accordingly, we will accept the juvenile court's findings of fact "unless no reasonable evidence supports those findings." *Jennifer B. v. Ariz. Dep't of Econ. Sec.*, 189 Ariz. 553, 555, 944 P.2d 68, 70 (App. 1997).

¶12        Once a juvenile court finds that a parent is unfit, the focus shifts to the child's best interests and the court must balance the unfit parent's diluted interest "against the independent and often adverse interests of the child in a safe and stable home life." *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶ 15, 365 P.3d 353, 356 (2016) (quoting *Kent K. v. Bobby M.*, 210 Ariz. 279, 286, ¶ 35, 110 P.3d 1013, 1020 (2005)).  Here, because Mother does not challenge the finding of abandonment pursuant to A.R.S. § 8-

---

2        Mother has not challenged the juvenile court's finding of abandonment.  Therefore, she has conceded the accuracy of those findings and we do not address further the statutory ground for termination. *Birtz v. Kinsvater*, 87 Ariz. 385, 388, 351 P.2d 986, 987 (1960).

533(B)(1), the dispositive issue is whether there was sufficient evidence to support the court's best interests finding.

¶13         Mother argues that the juvenile court erred because the court focused solely on adoptability to support its best interests finding.  We disagree.  Though the court did find that Child was adoptable and that adoption was in her best interests, it was not the *sole* factor on which the juvenile court relied.  *Id.* at 3–5, ¶¶ 12–17, 365 P.3d at 355–57 (stating that depending on the circumstances, adoption can provide sufficient benefits to support a best interests finding in private severance actions).

¶14         First, the record reveals that Mother had no meaningful relationship with Child since 2011.  Mother has been unable to provide stability for Child due to her repetitive periods of incarceration from 2011 at least until the time of the first severance trial.  During that time, Mother was unable to provide either emotional or financial support for Child.  Upon release, Mother made contact with Father in an effort to see Child on only two occasions, but cancelled both of those visits.  Mother was also homeless, and thereby unable to provide meaningful stability for Child.

¶15         Second, Mother has not remedied her chronic drug abuse issues.  Mother was recently convicted of possession of drug paraphernalia and she has had lifelong issues with drug abuse.  Therefore, though an anticipated benefit of termination would be Child's availability for adoption (Father's current wife is prepared and willing to adopt), the potential benefit of adoption was not the exclusive best interests finding upon which Mother's rights were terminated.

¶16         Mother next argues that the expert testimony offered was insufficient to satisfy ICWA standards.  The record, however, does not support Mother's assertion.  In this case, Indian Child Welfare expert witness Richard England testified that Mother was offered multiple services in order to avoid the family breakup.  Mother was allowed supervised visitation with Child but only contacted Father twice about seeing Child.  Mother was also required to participate and provide six months of clean urinalysis testing results, but only provided one such result.  Mother has not had physical contact with Child since 2011.  Because Mother failed to remedy these conditions, the attempts to keep the Indian family together proved unsuccessful.

¶17         In addition, England testified that Mother's continued contact with Child is likely to result in serious emotional damage.  England interviewed Child prior to trial and testified that Child was well-adjusted

in a stable home environment with Father, siblings, and stepmother, who Child considers her mother. Stepmother desires to adopt Child, which would further fortify Child's psychological attachment to her stepmother, and strengthen Child's sense of stability, thus alleviating Child's stress. England also testified that in the eyes of ICWA, adoptability is beneficial because social and religious customs of the Navajo Nation will be imparted to Child through Father. England testified that Father would best facilitate tribal involvement, which, in turn, would help Child developmentally, socially, psychologically, and culturally.

¶18 "As long as there is some expert testimony in the record concerning a parent's past conduct and current inability to care for the child, a court can infer the likelihood of future emotional or physical damage to the Indian child." *Steven H. v. Ariz. Dep't of Econ. Sec.*, 218 Ariz. 566, 570, ¶ 13, 190 P.3d 180, 184 (2008).

¶19 After considering the evidence presented to the juvenile court in light of the best interests of the child, we conclude that reasonable evidence supports the juvenile court's finding that Father has met his burden of showing that severance is in Child's best interests both under the statutory burden of proof and ICWA.

## CONCLUSION

¶20 We affirm the juvenile court's order terminating Mother's parental rights.



AMY M. WOOD • Clerk of the Court
FILED: AA

6