NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

TABATHA T., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, A.T., L.T., *Appellees.*

No. 1 CA-JV 16-0356
FILED 2-9-2017

Appeal from the Superior Court in Maricopa County
No. JD528105
The Honorable Karen L. O'Connor, Judge

**AFFIRMED**

COUNSEL

The Stavris Law Firm, PLLC, Scottsdale
By Alison Stavris
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Nicholas Chapman-Hushek
*Counsel for Appellee Department of Child Safety*

**MEMORANDUM DECISION**

Judge Lawrence F. Winthrop delivered the decision of the Court, in which
Presiding Judge Randall M. Howe and Judge Jon W. Thompson joined.

**W I N T H R O P**, Judge:

¶1        Tabatha T. ("Mother") appeals the juvenile court's order terminating her parental rights to A.T. and L.T. ("the children").[1]  Mother challenges each of the three statutory bases—neglect, chronic substance abuse, and fifteen months out-of-home placement—the juvenile court found as grounds for the order terminating her rights.  For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY[2]

¶2        Mother, who was born in 1975, is the biological mother of the children, who were born in 2011 and 2013.  Mother has a history of substance abuse—including marijuana, crystal methamphetamine, cocaine, ecstasy, "shrooms," LSD, PCP, and alcohol.  In more recent years, she began abusing various prescription pain and psychotropic medications.

¶3        In September 2014, Father called the police after Mother sent him a text message threatening to harm herself and the children.  After arriving at Mother's home, police officers discovered an unsecured, loaded gun on a desk in the room where three-year-old A.T. was sleeping.  The officers took Mother to a local hospital as a suicide risk.[3]  Mother was admitted for psychiatric care and hospitalized for nine days.

¶4        The Department of Child Safety ("DCS") removed the children from the home, placed them in an out-of-home placement, and successfully petitioned to have the juvenile court adjudicate them dependent on the basis that Mother was unable to parent them safely due to mental health issues, substance abuse, and neglect.

---

[1]        The parental rights of the children's father ("Father") were also terminated.  Father is not a party to this appeal.

[2]        We view the facts and reasonable inferences therefrom in the light most favorable to affirming the juvenile court's order.  *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7, 225 P.3d 604, 606 (App. 2010).

[3]        The day before this incident, Mother called the police to her residence due to a domestic violence incident between her and a former boyfriend.  At the time police were called out, Mother "appeared to be under the influence and had a difficult time staying on track."

¶5        Due to concerns that Mother's abuse of her prescription medications adversely impacted her ability to parent and protect the children, and in an effort to reunify Mother and the children, DCS required Mother to cease her substance abuse and show she would ensure the children's safety.  To help her do so, DCS offered Mother numerous services, including random drug testing, substance abuse assessment, individual counseling, a psychological evaluation and consultation, a psychiatric evaluation, parent aide services, supervised visitation, and a family reunification team.

¶6        Over the next twenty-three months, Mother participated in services, including urinalysis testing and a substance abuse assessment, although the TERROS intake assessor did not recommend that she participate in treatment.  Nevertheless, Mother's case manager testified that Mother appeared "drowsy, disorganized, and not understandable" when she met with the children and DCS.

¶7        Between mid-December 2014 and early June 2015, Mother consistently tested positive for her medications, and the level of the medications in her urine stayed high—even after Mother claimed she had changed her medications and the levels should decrease.  She also twice tested positive for alcohol.  Although she consistently visited the children, Mother often focused on Father and needed to be redirected from discussing aspects of the dependency case with the children, even after the parent aide had advised Mother not to do so.  When things did not appear to be going her way, Mother would become visibly upset, causing the children to cry and misbehave, and as a result, the parent aide voiced concerns about Mother's behavior and the children's safety.

¶8        Meanwhile, a psychologist—Daniel Juliano, Ph.D.—evaluated Mother in December 2014 and January 2015.  He noted that Mother "presented with acute despair, sadness, anxiety, a great deal of fearfulness, mistrust and hyper vigilance," and opined that Mother "has major anxiety problems, obsessive-compulsive features, and she believes she is ADHD [attention deficit hyperactivity disorder], but there could be a more significant mood related disturbance, perhaps even a bipolar disorder."  Dr. Juliano diagnosed Mother with Mood Disorder NOS, ADHD, R/O Anxiety Disorder with Prominent Obsessive-Compulsive Features, and R/O PTSD (post-traumatic stress disorder).  He also stressed that Mother should not "burden[] her children with her concerns, worries, and despair" and opined that the prognosis for Mother's ability to properly parent the children in the foreseeable future "would be dependent on her

demonstrated sobriety, her continued stabilization for a mood related difficulty, and her adherence to a therapy."

¶9　　　　Despite continuing concerns about Mother's sobriety and ability to properly focus on the children during visitation, DCS began to allow Mother to have overnight visits with the children in late December 2015, and referred her for a family reunification team.　In March 2016, however, DCS revoked such visits and the services of the reunification team.[4]　In response, Mother left DCS rambling, incoherent voicemails that sounded as though she was under the influence of substances.　At subsequent visits with the children, Mother's parent aide observed Mother slurring her speech, appearing "slowed down," and generally acting as though she was abusing her prescription medications.

¶10　　　　At the same time, Mother's urinalysis tests were returning positive for high and varied levels of her medications.　Her levels of her prescribed amphetamine salt tablets ranged from 7,000 to 64,380 nanograms per milliliter, even though she was prescribed a set dosage and was not to take it as needed.　Consequently, DCS surmised that Mother had not taken her medications as prescribed, and noted a continuing concern "about [M]other's ability to parent and make appropriate decisions that can keep her children safe while using her prescription medications."

¶11　　　　In mid-May 2016, DCS consulted Dr. Juliano, who advised that Mother "has a difficult to treat pain disorder as well as a complicated mood disorder, which could cause unexpected drug interactions that would need to be evaluated by a medical professional."　Dr. Juliano also recommended that Mother renew sessions with her therapist, and be directed to focus and "stay on message" with the children during parent aide visits.　He also noted that "the case plan for reunification . . . is currently challenged by a number of unknowns and risk factors that were evident during the beginning of this case and continue to be evident now almost twenty months later."

¶12　　　　On May 25, 2016, DCS moved to terminate Mother's parental rights to the children on neglect, mental illness, chronic substance abuse,

---

[4]　　Mother had allowed a woman not approved by DCS to stay with her, even when the children visited overnight.　The unapproved woman also had children in DCS's custody, and her presence added to existing DCS concerns about Mother exposing the children to "inappropriate adults."

and fifteen-month out-of-home placement grounds. *See* Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(2), (3), (8)(c) (Supp. 2016).

**¶13** From then on, Mother's urine returned positive for medications at high and unstable levels. After reviewing Mother's TASC records, Mother's medication prescriber confirmed that Mother was abusing her prescribed medications (amphetamine salts, morphine, and oxycodone) and was regularly testing positive for oxymorphone—an unprescribed drug. Nonetheless, Mother continued to deny that she abused her medications or had ever threatened to harm herself and the children.

**¶14** DCS continued to provide Mother with supervised visitation; however, during the visits, Mother would become upset, yell, and talk openly about the legal case, and the children would subsequently come home distraught and have difficulty sleeping. During an August 2016 visit to Mother's home, the parent aide noted "multiple issues," including that Mother "was not using A/C and the house was hot with limited airflow, smelled of animal urine, and was quite dirty." Moreover, Mother appeared disorganized, cried multiple times, and discussed losing her parental rights with the children, including stating, "I will never see you again, they are going to take you away forever." At one point, Mother went to her bedroom for approximately thirty minutes while the children waited for her to play, and she also coached the children to state that their placement had hit one of them.

**¶15** On August 17, 2016, the juvenile court held a hearing on the motion for termination. After taking the matter under advisement, the court terminated Mother's parental rights based on neglect, chronic substance abuse, and fifteen-month out-of-home placement grounds. The court also found DCS had made diligent efforts to provide reunification services for Mother, and termination was in the children's best interests.

**¶16** Mother filed a timely notice of appeal. We have jurisdiction pursuant to A.R.S. § 8-235(A) (2014) and Rule 103(A) of the Arizona Rules of Procedure for the Juvenile Court.

**ANALYSIS**

I. *Standard of Review*

**¶17** "Parents possess a fundamental liberty interest in the care, custody, and management of their children." *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 24, 110 P.3d 1013, 1018 (2005) (citing *Santosky v. Kramer*, 455 U.S.

745, 753 (1982); *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248, ¶ 11, 995 P.2d 682, 684 (2000)). Even fundamental rights are not absolute, however. *Id.* (citing *Michael J.*, 196 Ariz. at 248, ¶ 12, 995 P.2d at 684). A court may sever those rights if it finds clear and convincing evidence of one of the statutory grounds for severance, and finds by a preponderance of the evidence that severance is in the best interests of the children. *See* A.R.S. §§ 8-533(B), -537(B) (2014); *Kent K.*, 210 Ariz. at 281–82, 288, ¶¶ 7, 41, 110 P.3d at 1015–16, 1022.

**¶18** The juvenile court retains great discretion in weighing and balancing the interests of the child, parent, and state. *Cochise Cty. Juv. Action No. 5666-J*, 133 Ariz. 157, 160, 650 P.2d 459, 462 (1982). As the trier of fact in a termination proceeding, the juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18, 219 P.3d 296, 303 (App. 2009) (quoting *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4, 100 P.3d 943, 945 (App. 2004)). Thus, the resolution of conflicts in the evidence is uniquely the province of the juvenile court, and we will not reweigh the evidence in our review. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 12, 53 P.3d 203, 207 (App. 2002); *see also Pima Cty. Adoption of B-6355*, 118 Ariz. 111, 115, 575 P.2d 310, 314 (1978) ("In considering the evidence it is well settled that an appellate court will not substitute its own opinion for that of the trial court." (citation omitted)). We will not disturb the juvenile court's order unless no reasonable evidence supports its factual findings. *Matthew L.*, 223 Ariz. at 549, ¶ 7, 225 P.3d at 606.

**¶19** "If clear and convincing evidence supports any one of the statutory grounds on which the juvenile court ordered severance, we need not address claims pertaining to the other grounds." *Jesus M.*, 203 Ariz. at 280, ¶ 3, 53 P.3d at 205 (citations omitted); *see also* A.R.S. § 8-533(B) (requiring that evidence sufficient to justify the termination of the parent-child relationship include "any one" of the enumerated termination grounds).

## II.     *The Fifteen-Month Out-of-Home Placement Ground*

**¶20** Mother challenges each of the statutory severance grounds found by the juvenile court. She first argues the juvenile court erred in terminating her parental rights to the children on the fifteen-month out-of-home placement ground.

¶21        The juvenile court may terminate parental rights under A.R.S.
§ 8-533(B)(8)(c) if DCS "has made a diligent effort to provide appropriate
reunification services"[5] and

> [t]he child has been in an out-of-home placement for a
> cumulative total period of fifteen months or longer pursuant
> to court order . . . ,[6] the parent has been unable to remedy the
> circumstances that cause the child to be in an out-of-home
> placement and there is a substantial likelihood that the parent
> will not be capable of exercising proper and effective parental
> care and control in the near future.

¶22        Mother suggests the court erred in finding that she failed to
remedy the circumstances that caused the children to be in an out-of-home
placement and that a substantial likelihood exists that she will not be
capable of exercising proper and effective parental control of the children
in the near future.  As support for her argument, Mother states that she was
offered and participated in numerous DCS services, sought out and
engaged in other services, obtained and has maintained employment as an
independent contractor with Uber, and despite her "disorganized
behavior," pays her own expenses.  However, the fifteen-month out-of-
home placement ground does not require the juvenile court to consider a
parent's efforts at remedying the circumstances that have caused the

---

[5]        Mother states once in her brief that the juvenile court erred in finding
that DCS made a diligent effort to provide appropriate reunification
services.  She fails to develop or support her argument, however, and her
conclusory statement comes at the end of her lengthy argument about how
she participated in "the array of DCS services" offered.  Given the
concededly large number of reunification services DCS offered in this
case—including random drug testing, substance abuse assessment,
individual counseling, a psychological evaluation and consultation, a
psychiatric evaluation, parent aide services, supervised visitation, and a
family reunification team—and Mother's failure to challenge the
sufficiency and appropriateness of these services during the dependency or
on appeal, we find no error in the juvenile court's determination that DCS
made a diligent effort to provide appropriate reunification services.

[6]        Mother does not challenge the juvenile court's finding that the
children have lived in an out-of-home placement for at least fifteen months
under court order.  Accordingly, she has conceded the accuracy of that
finding.  *See Britz v. Kinsvater*, 87 Ariz. 385, 388, 351 P.2d 986, 987 (1960).
Moreover, reasonable evidence supports the finding.

children to be in an out-of-home placement; rather, it requires the court to consider whether the parent has failed to remedy the circumstances—regardless of her efforts to do so—and assess her ultimate ability to remedy those circumstances. *Compare* A.R.S. § 8-533(B)(8)(a) ("the parent has substantially neglected or wilfully refused to remedy the circumstances") *and* (b) (same) *with* (c) ("the parent has been unable to remedy the circumstances" and "there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future"); *see also Maricopa Cty. Juv. Action No. JS-6520*, 157 Ariz. 238, 243, 756 P.2d 335, 340 (App. 1988).

**¶23**　　　Moreover, reasonable evidence supports the juvenile court's finding that "Mother is unable to remedy the circumstances that caused the children to be in an out-of-home placement," and its further finding that "there is a substantial likelihood that Mother will not be capable of exercising proper and effective parental care and control of the children in the near future." At the motion for termination hearing, the court was presented evidence that, despite being offered and engaging in reunification services, Mother continued to abuse her prescription (and other) medications, leading her to continue to display erratic behavior and make poor decisions, thereby putting the children at risk while in her care. Additionally, Mother's DCS case manager testified that Mother had neglected the children and placed them in an unreasonable risk of harm, failed to remedy the circumstances that caused the children's out-of-home care, and remained unable to discharge her parental responsibilities. The case manager added that, after nearly two years of services with little improvement, a substantial likelihood existed to believe Mother would remain unable to exercise parental care and control in the near future. The juvenile court's finding that clear and convincing evidence supported severance of Mother's parental rights under the fifteen-month out-of-home placement ground is supported by reasonable evidence, and we will not reweigh the evidence. *See Jesus M.*, 203 Ariz. at 282, ¶ 12, 53 P.3d at 207; *Pima Cty. Adoption of B-6355*, 118 Ariz. at 115, 575 P.2d at 314.[7]

　　　　　III.　　*Best Interests*

**¶24**　　　Mother does not challenge the juvenile court's finding that severance was in the children's best interests; however, we note that the

---

[7]　　Because we affirm the juvenile court's severance finding under the fifteen-month out-of-home placement ground, we do not address Mother's challenges to the neglect and chronic substance abuse grounds. *See Jesus M.*, 203 Ariz. at 280, ¶ 3, 53 P.3d at 205; A.R.S. § 8-533(B).

record supports the finding. The record demonstrates both the affirmative benefits of permanency and stability to the children from severance and the elimination of potential harm that would exist if the parent-child relationships were not severed. *See Maricopa Cty. Juv. Action No. JS–500274*, 167 Ariz. 1, 6, 804 P.2d 730, 735 (1990); *Oscar O.*, 209 Ariz. at 334, ¶ 6, 100 P.3d at 945. Further, the court found the children's current placement is meeting their needs, and the children are adoptable. *See Audra T. v. Ariz. Dep't of Econ. Sec.*, 194 Ariz. 376, 377, ¶ 5, 982 P.2d 1290, 1291 (App. 1998); *Maricopa Cty. Juv. Action No. JS–501904*, 180 Ariz. 348, 352, 884 P.2d 234, 238 (App. 1994).

**CONCLUSION**

¶25     The juvenile court's order terminating Mother's parental rights to the children is affirmed.



AMY M. WOOD • Clerk of the Court
FILED:  AA