[Civil No. 4274.   Filed April 21, 1941.]

[112 Pac. (2d) 578.]

DIXON FAGERBERG, Appellant, v. W. C. DENNY, Appellee.

Mr. T. J. Byrne and Mr. Charles E. McDaniel, for Appellant.

Mr. E. S. Clark and Mr. Neil C. Clark, for Appellee, and Mr. William T. Elsing, Associate Counsel.

LOCKWOOD, C. J.—This is an action by W. C. Denny, hereinafter called plaintiff, against Dixon Fagerberg, hereinafter called defendant. It is based upon section 1884, Revised Code of 1928, which reads as follows:

*"Usury prohibited; penalty.* No person shall directly or indirectly take or receive in money, goods, or things in action, or in any other way, any greater sum or any greater value for the loan or forbearance of any money, goods, or things in action, than ten dollars on one hundred dollars for one year; any person contracting for, reserving or receiving, directly or indirectly, any greater sum or value, shall forfeit all interest."

The case was tried to the court sitting without a jury and judgment rendered in favor of plaintiff for the sum of $58,240.21, with interest, whereupon this appeal was taken.

The facts material to a determination of the appeal as found by the trial court, and stated in a narrative form, are as follows: During all the periods involved defendant was engaged in the brokerage business, which included the loaning of money for hire, while plaintiff was in the livestock business. For a long period of time the relation of borrower and lender existed between them, and on various occasions before the transactions involved in the present case plaintiff had borrowed from and repaid to defendant large sums of money. In 1929 plaintiff applied to defendant for a loan of $50,000. After considerable negotiation back and forth, the loan was made on October 28, 1929, when plaintiff executed in favor of defendant a note, which reads so far as material, as follows:

"$50,000.00                Prescott, Arizona
"October 28, 1929

"Five (5) years after date without grace, for value received, I promise to pay to the order of Dixon Fagerberg at the office of Dixon Fagerberg in Prescott, Yavapai County, Arizona, the sum of Fifty Thousand & 00/100 Dollars, payable in gold coin of the United States of America, the interest thereon in like gold coin, from date until paid, at the rate of ten per cent per annum, with interest payable quarterly, and if not so paid to be added to the principal and bear thereafter the same rate of interest. And should default be made in the payment of any interest when due, then both principal and interest shall become immediately due and payable at the option of the holder of this note.

.  .  .  .  .  .  .  .  .  .  .  .  .

"(Signed) W. C. DENNY."

This note was secured by both realty and chattel mortgages which also provided for future advances to be made upon the same security. At the time of the execution of these instruments, plaintiff was indebted to defendant in the sum of something over $5,500, and it was agreed that this should be repaid out of the amount loaned. It was also suggested by the office manager of defendant that, for the sake of convenience in bookkeeping, it might be well that the interest dates in future begin on January 1, 1930, rather than on the 28th of that month, as would be the condition under the specific terms of the note, and it was mutually agreed that this be done and that the interest up to January 1 be deducted from the principal of the loan, since plaintiff stated that the interest to become due on that date must, in any case, be paid out of the amount borrowed, as he would have no receipts from his business with which to pay it at that time. That this arrangement was not done for the purpose of collecting interest in advance upon the loan is shown by the fact that after the adjustment of interest had been made up to January 1, as stated, no more interest was charged or paid until April 1, 1930, and from that time on it was charged at the end of each quarter instead of the beginning. After the deductions above stated were made from the gross amount of the loan, the net balance was paid over to plaintiff by a deposit to his account in the Bank of Arizona. Thereafter, from time to time between April 5, 1930, and February 2, 1937, plaintiff borrowed additional sums of money, pursuant to the contract of October 28, 1929, amounting altogether to $54,609.53. For the first twenty-six months following the making of the original loan, defendant rendered to plaintiff monthly statements, showing all charges made against the latter on account of principal and interest, and all credits for payments, if any, made by plaintiff to defendant on

the account. During this period, in keeping the books of account, defendant carried two accounts which he designated, respectively, the "mortgage account" and the "open account." This was done as a bookkeeping convenience only, for the reason that the additional sums borrowed by plaintiff and the payments made by him were in odd amounts, and defendant desired to charge the mortgage account with even sums of five, ten or fifteen thousand dollars only. At regular quarterly intervals defendant computed the interest on the items included in the mortgage account, as aforesaid, at the rate of 10% per annum, and then entered the amount of this interest as a charge against plaintiff in the so-called open account. The open account, however, had the interest computed monthly instead of quarterly, and charges of the monthly interest thereon were entered in the open account and compounded monthly until a transfer was made from such open account to the mortgage account. On April 1, 1932, a change was made in defendant's method of bookkeeping. On that date he combined, as of January 1, 1932, the mortgage account and the open account by adding the two as they stood on January 31, merging them into one principal sum of $88,125.35, and from that date computed the interest on all balances due at the rate of 8% compounded quarterly, instead of 10%, this act being voluntary on his part. In 1937 plaintiff was in a position to discharge his indebtedness to defendant and asked for a statement for that purpose. This statement was finally rendered and therein defendant, instead of showing a balance due based on the compounding of interest as above set forth, recomputed the interest on the entire loan transaction and figured it, disregarding the provisions for compounding interest set forth in the original note, at the rate of 10% simple interest to December 31, 1931, and at 8% simple interest for the balance

of the time. A settlement was made between plaintiff and defendant upon this basis, and the final result was that the total payments actually made by plaintiff to defendant over the entire period of the loan amounted to some $4,324.68 less than the amount loaned plus 10% simple interest for the entire time.

The trial court from the foregoing facts found as conclusions of law that (a) the original contract which permitted the compounding of the interest quarterly was in violation of the usury law; (b) that the deduction by defendant of interest from October 28, 1929, to January 1, 1930, in advance, was also a violation of the usury law; and (c) that the voluntary reduction by defendant of the rate at which he calculated interest from 10% compound interest to 8% compound interest did not have the effect of removing the taint of usury which attached to the original contract. If the trial court's conclusions as above set forth correctly state the law of Arizona, the judgment must be sustained. If they do not, it must be reversed.

So far as the right to compound annually at the maximum rate of interest allowed by the usury statute in case interest is not paid when due, is concerned, it has been settled by the case of *Greer* v. *Greer*, 56 Ariz. 394, 108 Pac. (2d) 398. Therein we held that such compounding was permitted by the law of Arizona. But it is urged that while it may be true that interest may be compounded annually, it may not be compounded at more frequent dates, for the reason that the usury statute refers to interest for periods of a year. The argument is plausible, but we think it cannot be sustained. The reason for permitting compound interest, as given by all of the cases which allow it, is that when interest becomes due and is not paid it is, in effect, a new loan of the amount of that interest by the creditor to the debtor, and the maximum rate of interest may, therefore, be charged

thereon. It is also agreed by almost all of the authorities that it is not usury to provide that interest shall be payable oftener than annually. *Taylor* v. *Hiestand,* 46 Ohio St. 345, 20 N. E. 345; *Haines* v. *Commercial Mortgage Co.,* 200 Cal. 609, 254 Pac. 956, 255 Pac. 805, 53 A. L. R. 725. If a creditor may legally require that the interest be paid semi-annually, or quarterly, and this is not disputed, it becomes due at the end of such periods just as much· as it would at the end of a year if it were payable annually, and the reasoning which holds that interest due and unpaid annually, which the creditor forbears from collecting immediately as he may by process of law, may be compounded, applies just as much to interest due and unpaid quarterly.

We hold, therefore, that when an obligation expressly provides that the interest is payable quarterly, it may be compounded if not paid when due in the same manner as if it is payable annually only. *Covington* v. *Fisher,* 22 Okl. 207, 97 Pac. 615; *Blake* v. *Yount,* 42 Wash. 101, 84 Pac. 625, 114 Am. St. Rep. 106, 7 Ann. Cas. 487; *Wardlaw* v. *Woodruff,* 175 Ga. 515, 165 S. E. 557; *Hawley* v. *Howell,* 60 Iowa, 79, 14 N. W. 199.

There is one exception to this rule permitting interest to be compounded oftener than annually. If it appears from all of the facts in the case that the provision of frequent interest dates was inserted for the express purpose of defeating the usury law, the court will look beyond the form to the substance and the contract will be held usurious. *First Nat. Bank* v. *Waddell,* 74 Ark. 241, 85 S. W. 417, 4 Ann. Cas. 818. In the present case, however, there is not the slightest evidence that this was the purpose of the compounding. We know of no case holding that the mere fact that interest was payable quarterly in and of itself shows an intent to avoid the usury law. The learned

trial court, therefore, erred in holding that the original contract set forth in the note of October 29, 1929, was usurious.

A second and more difficult question arises out of the fact that interest for the period from the date last mentioned to January 1, 1930, was actually collected in advance by defendant. It is generally held that when the contract provides for the maximum rate of interest allowed by the law, if it also provides that the interest must be paid in advance, it is usurious, except perhaps when the loan is a short term one, and if the obligation in the present case had contained a provision that the interest must be paid in advance, it would have fallen within the prohibition of the law. It did not, however, contain any such provision, and the record shows that, with the exception of the one interest payment above referred to, all interest thereafter was computed and charged at the end of each quarter instead of at the beginning thereof. The evidence shows that the reason why the first period of interest was computed for less than three months was for the convenience in future bookkeeping, and that that interest was collected in advance because the borrower expressly stated in substance that it would have to be paid out of the money received in the loan, and that he might as well, therefore, pay it in advance. In order to establish usury there must be an intent to violate the law. And while when the contract is usurious on its face that intent will be presumed, when it is not we think the circumstances surrounding the transaction are admissible to show the true intent. *Blaisdell* v. *Steinfeld*, 15 Ariz. 155, 137 Pac. 555.

We are of the opinion that all of the evidence negatives any idea that there was any intent to collect interest in advance as such, but shows merely an agreement that for the convenience of both parties the first interest payment should be deducted from the

loan itself. Further, we are convinced that while the evidence shows defendant was a very careful business man, desiring to secure the maximum legal rate of interest upon his loans, he never at any time intended to violate the usury statute, and that when it appeared to him that the method of bookkeeping followed by him might have that effect, he very promptly and carefully changed it so as to keep within the limits of the law. This is evidenced by the fact that on the final settlement, he computed the interest at such a rate and in such a manner that over the whole period of the loan plaintiff paid less than the 10% interest permitted by law figured at simple instead of compound interest. The rate of interest which may be legally charged and the questions of whether it may be payable at intervals shorter than a year and may be compounded if not paid when due, are solely for the legislative judgment.

On the whole case, we are of the opinion that the parties did not provide in their original contract for a greater rate of interest than that permitted by law, and that defendant did not actually take nor receive in any manner any greater sum for the loan which he made to plaintiff than the legal rate of interest.

The judgment is reversed and the case remanded with instructions to render judgment for the defendant.

McALISTER, J., concurs.

ROSS, J., dissents.