351 P.2d 986

Maurice BRITZ and Clare A. Britz, husband and wife, Appellants,

v.

Mathilda KINSVATER, a single woman, Appellee.

No. 6621.

Supreme Court of Arizona.

May 4, 1960.

Shute & Elsing, Phoenix, for appellants.

Marvin Johnson, Phoenix, for appellee.

UDALL, Justice.

This is an appeal from a judgment in favor of plaintiff, Mathilda Kinsvater, and against defendants-appellants, Maurice A. and Clare A. Britz. The action was one to recover payments of interest which were allegedly usurious, i. e., in violation of A.R.S. § 44–1202. The case was tried to the court, sitting without a jury. The parties will hereinafter be designated as they appeared in the trial court, i. e., plaintiff and defendant.

There are two claimed errors:

1. The conclusions of law are not supported by the findings of fact;

2. The judgment is not supported by the evidence.

 Inasmuch as the trial court's findings of fact are not themselves challenged by this appeal, we may assume that their accuracy is conceded. In any event the evidence must be considered in the light most favorable to a sustaining of the judgment. We paraphrase these findings as follows:

Plaintiff was the owner of certain real property in Tempe, Arizona, which she had transferred under an executory contract of sale. This contract, dated August 3, 1954, called for periodic payments which were to be applied toward the reduction of the principal debt of $75,000 (the sale price), and which also were to include interest at 4% per annum on the principal amount.

On November 9, 1955, the payments theretofore made by the buyer of the property had reduced the principal amount of the obligation to $63,200. Shortly prior to that date, plaintiff had found herself in pressing need of some $15,000. In an effort to acquire that sum, she had made several unsuccessful efforts to borrow money on the security of her executory sales contract. One of the prospective lenders approached for this purpose was defendant, who refused to lend any money on such terms. This proposal was made on behalf of plaintiff by an intermediary, one Joan Demand, a real estate broker. Some time later defendant advised Demand that he would "purchase" the sales contract for $12,000, with an option to plaintiff to repurchase the instrument at some later time. Demand communicated this proposition to plaintiff, who agreed thereto. Up to this point plaintiff and defendant had never met.

An escrow agreement was set up on November 9, 1955, with Phoenix Title and Trust Company as escrow agent, for the "sale" of said contract by plaintiff to defendant. Under the terms of the escrow, plaintiff was to put up her contract, and defendant was to pay in the $12,000. The following provision was also contained in the escrow instructions:

"The consideration for this assignment shall be by agreement between

the parties outside of this escrow. You will be handed by the buyer hereunder the sum of $12,000 in cash to be disbursed through this escrow, and the other terms of the agreement regarding the consideration hereunder shall be no concern of the escrow agent. Your title policy called for hereunder shall be for $12,000."

In accordance with the terms of the escrow, plaintiff assigned or, as defendants maintained, "sold" the contract to defendant on November 14, 1955. On the same date, the parties executed a collateral agreement which was not made a part of the escrow instructions. This was called a "reassignment agreement", and it defined the continuing rights and obligations of the parties to this "sale". This instrument provided that: (1) defendant would reassign the contract to plaintiff "when the obligation has been reduced to $51,200, however, not for a period of at least six months from date;" (2) defendant was "purchasing outright the interest and the principal in connection with the above mentioned contract of sale, subject, however, to an option in favor of [plaintiff] to repurchase at any time after one year as above stated;" and (3) "the terms of the contract of sale cannot be changed, altered, or amended, sold, transferred, or conveyed, without the consent of [plaintiff]."

In June of 1956, some seven months after the above described transaction, it became necessary for plaintiff to reacquire the contract. Pursuant to plaintiff's instructions, the escrow agent paid $13,686.07 to defendant, who thereupon reassigned the instrument to plaintiff. The sum of $13,686.07 represented the following items: the $12,000 received by plaintiff from defendant; approximately 4% interest on $63,200 from the date of the purported sale of the contract; $115.20 for unearned insurance premiums, plus a small payment of interest on the latter.

On the basis of these facts, the trial court entered six conclusions of law, the essence of which is that the transaction set out above was in reality a loan rather than a sale, and that the compensation therefor received by defendant (the lender) was usurious. The court thus rendered judgment for the plaintiff in the amount of $1,570.87—the total amount of interest found to have been exacted—which is in accordance with A.R.S. § 44–1202. This appeal followed.

■■ The main contention of defendant on appeal is that, on the given facts, this transaction does not fit into the accepted definition of a usurious loan. Usury has been defined by the legislature, in A.R.S. § 44–1202, supra:

"No person shall directly or indirectly take or receive in money, goods, or things in action, or in any other way, any greater sum or any greater

value for the loan or forbearance of any money, goods, or things in action, than eight dollars on one hundred dollars for one year. Any person, contracting for, reserving or receiving, directly or indirectly, any greater sum or value, shall forfeit all interest."

A judicial definition was declared in Blaisdell v. Steinfeld, 15 Ariz. 155, 137 P. 555, and reaffirmed in Seargeant v. Smith, 63 Ariz. 466, 163 P.2d 680. Therein it was held:

"In deciding whether any given transaction is usurious or not, the courts will disregard the form which it may take and look only to the substance of the transaction in order to determine whether all the requisites of usury are present. These requisites are: (1) An unlawful intent; (2) the subject-matter must be money or money's equivalent; (3) a loan or forbearance; (4) the sum loaned must be absolutely, not contingently, repayable; and (5) there must be an exaction for the use of the loan of something in excess of what is allowed by law. If all these requisites are found to be present, the transaction will be condemned as usurious, whatever form it may assume, and despite any disguise it may wear. But, if any one of these requisites, is lacking, the transaction is not usurious, although it may bear the outward marks of usury." Sear-

geant v. Smith, 63 Ariz. 466, 468, 163 P.2d 680, 681.

The position taken by defendant appears to rest upon three specific points:

1. That this was a sale rather than a loan;

2. That the sum paid to plaintiff was not subject to the usury law, since it was contingently, not absolutely, repayable;

3. That there was no intent on the part of defendant to contravene the statute by exacting usurious interest.

Each of these points contradicts the following conclusion of law entered by the trial court, viz.:

"The transaction amounted to a loan of money, absolutely repayable, with an unlawful intent for the exaction for its use of something in excess of the amount allowed by law."

The sole question before us, then, is whether this conclusion is legally supportable upon the facts shown by the record. We shall consider defendant's three points seriatim.

■ 1. *Sale or loan.* The trial court was clearly correct in its determination of this basic issue. It is unquestionably the law that a "sale" absolute on its face may be treated as a mortgage if the intention of the parties so indicates. De Wulf v. Bissell, 83 Ariz. 68, 316 P.2d 492; Rogers v. Greer, 70 Ariz. 264, 219 P.2d 760; Farrell v. West,

57 Ariz. 332, 113 P.2d 866; Coffin v. Green, 21 Ariz. 54, 185 P. 361; Stephen v. Patterson, 21 Ariz. 308, 188 P. 131. An examination of all the facts surrounding this escrow sale agreement manifestly reveals that the parties envisaged a security transaction rather than a sale. Evidence adduced at the trial shows that the defendant had no familiarity with the property involved, i. e., the Tempe real estate. The reassignment agreement indicates the extent to which the "seller" reserved her interest in the proeprty. Not only was she given an option to repurchase at an advanced price (the $12,000 "sale" price plus an amount equal to 4% interest on $63,200 for one year), but it was specifically provided that the contract would revert to her after the payments thereunder (with interest on the principal amount) had reduced the principal by $12,000. Furthermore, the "buyer" bound himself as a trustee of the property conveyed; he could assert no dominion—other than the receipt of the proceeds—over his "purchase" without the consent of the "seller". Even defendant, in spite of his repeated protestations that this was a bona fide sale, suffered a lapse at one point and gave the following answer during direct examination by his attorney:

"Q. Was it your entire effort to make a legal transaction with as good security as you could get for the loan of your money? A. Yes."

The device of disguising a usurious loan contract as a resale with option to repurchase is not new. In Wilcox v. Moore, 354 Mich. 499, 93 N.W.2d 288, wherein a similar transaction was before the Michigan court, it was said:

"There is no need, at this late date in the law of usury (see Leviticus, XXV, 35–37; Deuteronomy XXIII, 19, 20; Saint Chrysostom's Fifth Homily on the Gospel of St. Matthew;* C.L. 1948, § 438.52, Stat.Ann. § 19.12) to discuss its rationale. Suffice to say that its purpose is to protect the necessitous borrower from extortion. In the accomplishment of this purpose a court must look squarely at the real nature of the transaction, thus avoiding, so far as lies within its power, the betrayal of justice by the cloak of words, the contrivances of form, or the paper tigers of the crafty. We are interested not in form or color but in nature and substance." 93 N.W.2d 291.

In addition to our own decision in De Wulf v. Bissell, supra, we find a wealth of authority from other jurisdictions to the effect that, when the intent of the parties has been to create a debtor-creditor relationship, it is immaterial that the form of

* Footnote by the court: "In 10 A Select Library of the Nicene and Post-Nicene Fathers of the Christian Church (Schaff ed. 1888) 31–36."

the transaction is a sale with option to repurchase. Tillar v. Cleveland, 47 Ark. 287, 1 S.W. 516; Cannon v. Seattle Title Trust Co., 142 Wash. 213, 252 P. 699; Fiedler v. Darrin, 50 N.Y. 437; Ferguson v. Sutphen, 8 Ill. 547; and other cases cited in note, 154 A.L.R. 1063.

 This is not to say that the mere fact that a transaction in the form of a sale is accompanied by an agreement of repurchase at an advanced price renders the transaction a loan, so as to subject it to the usury law. Many such transactions are perfectly legitimate and precisely what they purport to be. Stark v. Bauer Cooperage Co., 6 Cir., 3 F.2d 214, certiorari denied 267 U.S. 604, 45 S.Ct. 464, 69 L.Ed. 809. But when, as here, the circumstances of the "sale" indicate that it was intended to be no more than a thinly disguised security transaction, the courts will not be deceived by the outward appearances. We agree with the trial court's implied holding that the assignment of the contract was solely as security for the loan to plaintiff by defendant of $12,000, and that any amounts received by defendant under the contract were to be in repayment of the principal and interest on that loan.

 2. *Absolutely repayable.* Defendant contends the "absolutely, not contingently, repayable" requisite of a usurious loan is not met here. It is true that no-

where in the various instruments involved in this transaction is there a promise by plaintiff to make any repayment to defendant. However, defendant, in advancing this argument, has misconceived the nature of the requirement set out in the Blaisdell and Seargeant cases, supra. In applying this rule, the courts have held that a loan is "contingently" repayable only if the lender has—by the terms of the loan—subjected himself to some greater hazard than that the borrower will fail to repay the loan or that the security will depreciate in value. Seargeant v. Smith, supra. Knight v. American Investment & Improvement Co., 73 Wash. 380, 132 P. 219. Bang v. Phelps & Bigelow Windmill Co., 96 Tenn. 361, 34 S.W. 516. Otherwise none of the sale-with-option-to-repurchase transactions could be usurious, and this is clearly not the law. De Wulf v. Bissell, supra. An example of a debt "contingently repayable" is posed by this situation: Borrower says to lender: Lend me $10 to bet on a horse race, and if the horse wins, I promise to pay you $15 tomorrow; if the horse loses, you get nothing.

 The theory behind the rule is that where the lender risks the principal with the chance of either getting a greater return than the lawful interest rate or possibly getting nothing (if the contingent event fails to occur), there is no usury, since

"Usury laws do not forbid the taking of business chances in the employment of money." Restatement, Contracts, § 527, Comment a; Owens v. Conelly, 77 Ariz. 349, 272 P.2d 345. Thus, as a general rule, it would appear that an ordinary secured loan with interest at a definite rate would always be "absolutely repayable" in the terms of this rule, since the lender would never, in such case, face any greater hazard than that the borrower might default or that the security might depreciate. In this case, the loan was secured by the assignment of the contract of sale, and the rate of return was set absolutely by that contract. It is our view the trial court was correct in holding that this loan was not contingently repayable so as to take it out of the prohibition of the usury statute.

■ 3. *Intent*. The intent required to constitute usury is not necessarily a consciousness of the illegality of the transaction. It is sufficient that the loan contract unequivocally calls for an excessive rate of return on the indebtedness. In such case, the intent to exact usury is presumed. Fagerberg v. Denny, 57 Ariz. 179, 112 P.2d 578; Seargeant v. Smith, supra; Houchard v. Berman, 79 Ariz. 381, 290 P.2d 735, 57 A.L.R.2d 627; Blaisdell v. Steinfeld, supra. As was said in the Blaisdell case:

"The 'unlawful intent' referred to is presumed 'from the mere fact of intentionally doing what is forbidden by statute. It is not necessary that the parties shall know that in so doing they are violating the law.' 39 Cyc. 920." 137 P. 555, 568.

In the instant case, once the escrow arrangement had been set up, it was inescapable that defendant would receive, in return for the use of his money, an amount in excess of the highest permissible rate. Under the agreement entered into by the parties, the least that would be paid to defendant would be 4% interest on $51,200 over a six-month period ($1,024, or 17% on the $12,000 loan for six months). As it turned out, plaintiff found it necessary to satisfy her obligation some seven months after the loan had been made, in order to effect a reassignment of the sale contract. At that time the cost to her to regain the rights to the security was $13,686.07, of which $1,570.87 was interest. Thus she actually paid interest at the rate of 22.4% per annum for the use of the $12,000 for seven months. Even if we spread this interest payment over the full year, since plaintiff's "option" was not to be exercised for that period, the effective rate is 13.1% and the result is still usury.

■ We hold the trial court was correct in finding that this transaction was usurious on its face, and therefore the requisite intent is presumed.

The arrangement herein described is palpably usurious, and the trial court prop-

erly applied the remedy provided by statute, i. e., a forfeiture of all interest.

Judgment affirmed.

STRUCKMEYER, C. J., and PHELPS, JOHNSON and BERNSTEIN, JJ., concur.