660 P.2d 869

**CREDIT FINANCE, INC., an Arizona corporation, Plaintiff/Appellee,**

v.

**W.A. Courtney BATEMAN, Jr. and Jane Doe Bateman, Defendants/Appellants.**

**No. 2 CA–CIV 4485.**

Court of Appeals of Arizona, Division 2.

Jan. 19, 1983.

**3.** The statute concerns the power of the court to dispose of property in a proceeding for divorce or legal separation.

Schorr, Leonard & Felker, P.C. by Franklin O. Eldridge and Robin E. Bergstein, Tucson, for plaintiff/appellee.

Ramaeker, Fauver & Till by Stuart L. Fauver, Sierra Vista, for defendants/appellants.

## OPINION

HOWARD, Chief Judge.

This is an appeal from a granting of a motion for summary judgment in a quiet title action. The trial court ruled that appellants had no interest in the land and quieted title in appellees. Appellants contend the trial court erred because (1) appellees were not the real party in interest, (2) appellants did not receive notice of the forfeiture of their interest in the land, and (3) the acceptance by the collection agency of the delinquent payments tendered by appellant precluded the granting of summary judgment. We affirm since the undisputed facts show that appellees were entitled to judgment as a matter of law. See Rule 56(c), Arizona Rules of Civil Procedure, 16 A.R.S.

The record shows that on August 17, 1970, appellee Credit Finance, Inc. (CFI) sold the La Sombra Motel to Transamerica Title Company—Trust No. 27,339 (trust) under a contract with the sale of real estate. On November 13, 1972, the trust conveyed its vendee's interest to Lyle and Bernice Bergstrom by means of a joint tenancy deed. The Bergstrom interest was later conveyed on May 22, 1978, by means of contract for a sale of real estate, to Ann Browne (Browne). Bateman, pursuant to a written agreement with Browne, lent Browne $15,000. Browne then executed a promissory note and secured the promissory note by means of a warranty deed, granting an undivided 20 per cent interest in the real property to Bateman. The agreement between the parties stated that once the promissory note had been fully paid Bateman would execute a warranty deed reconveying the property to Browne.

Turning to the contract of sale between CFI and the trust, it provided that time was of the essence and gave the vendor the option to sue for specific performance or declare a forfeiture. If the vendor desired to declare a forfeiture, the contract provided that it could do so by notice to the escrow agent who would then record the quitclaim deed given to it by the vendee. This method was not exclusive and the contract also gave the vendor the right to employ any other lawful method of forfeiting the vendee's interest. If forfeiture by notice was employed, the contract required the vendee to give written notice of forfeiture to the escrow agent who in turn was required to mail it to the vendees who then had ten days from the date of mailing to correct the default. None of the transfers of the property which we have previously set forth were ever reported to CFI. However, the monthly payments continued to be timely made to the collection agent until late 1980. The last payment was received on September 4, 1980, for the payment due August 15, 1980.

In December 1980, Browne attempted to tender a partial payment which was rejected. CFI then sent the following letter to the escrow company on December 11, 1980, which was in turn sent to and received by Browne no later than early January 1981:

" * * * This will confirm our prior instructions not to accept any partial payments under the Agreement For The Sale Of Real Estate dated August 17, 1970. The buyer under the contract is in default and has been in default under the agreement in excess of sixty (60) days. The buyer has also defaulted by committing waste to the property.

You are directed to return the buyer's partial payment and take all actions necessary to forfeit the buyer's interest under the contract. * * * "

No further payments were received and on April 7, 1981, CFI filed its complaint against Browne, Bateman and all others

who potentially claimed an interest in the property. Browne subsequently filed for bankruptcy.

## REAL PARTY IN INTEREST

Rule 17(a), Arizona Rules of Civil Procedure, 16 A.R.S., states:

"Every action shall be prosecuted in the name of the real party in interest.... No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of the commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest."

■ In appellants' opposition to the motion for summary judgment which appellants filed on January 15, 1982, they attached a copy of a title report which showed that CFI's vendor's interest had previously been conveyed to United States Fiduciary Corporation, a defendant in the case, and that as of the date of the report, April 30, 1981, there had been no reconveyance of this interest back to CFI. Appellants argued that this created a factual issue as to whether or not at the time of the motion for summary judgment CFI was the real party in interest. We do not agree. The record shows that on November 2, 1981, United States Fiduciary Corporation entered into a stipulation in this case with appellee wherein it agreed that CFI's rights to the subject property were prior and superior to any rights or claims of United States Fiduciary Corporation and that it was barred and foreclosed from all right, title, claim and demand on the subject property and every part thereof and that CFI was entitled to immediate possession of the property. A judgment was then entered on the same date pursuant to the stipulation. It therefore appears that on the date of the granting of the motion for summary judgment, CFI was the real party in interest.

## NOTICE OF FORFEITURE

It is appellants' position that appellee, by virtue of its letter of December 11, 1981, to the escrow, elected to forfeit by notice and that under the terms of the contract notice had to be given to all the parties in the chain of transfer including themselves.[1]

■ Assuming arguendo that the letter was intended to trigger the forfeiture by notice provisions of the master contract, appellants were not entitled to notice. Since they obtained their interest in the land subsequent to the recording of the interest of CFI, they were required to give notice of this interest to CFI in order to be entitled to notice. *Kendrick v. Davis,* 75 Wash.2d 456, 452 P.2d 222 (1969). They had not done so.

■ Appellants also contend that the forfeiture was invalid since there was no evidence that the trust received notice. This contention is based upon appellants' theory that once CFI chose to forfeit by notice, it was required to give notice to all transferees even though it later proceeded by judicial forfeiture. Even if we were to again assume that forfeiture-by-notice was instigated by the December letter, we are not able to agree. Appellee's election to preceed by forfeiture by notice was not immutable. We know of no reason why, under the facts of this case, appellee could not proceed by judicial forfeiture when Browne failed to tender the delinquencies within 10 days after receipt of the December letter. The December letter did not give the other transferees a vested right to forfeiture by notice.

## ACCEPTANCE OF PAYMENTS

■ On May 15, 1981, after the commencement of the action, appellants tendered to the escrow the entire amount of the arrearages. The record shows that when appellants went to the escrow agent in May and tendered the check, the escrow

---

1. It is clear that the warranty deed given by Browne to appellants was intended to operate as a mortgage. See A.R.S. § 33–702, *Britz v. Kinsvater,* 87 Ariz. 385, 351 P.2d 986 (1960).

agent wrote a receipt but told appellants that it could not accept the check since only the parties could do that. She then called CFI's attorney, Franklin Eldridge, while appellant was still there. He told the agent that the payment should not be accepted. The collection agent attempted to return the check to Mr. Bateman but he refused to take it back. The check was later returned to Mr. Bateman by mail.

The foregoing facts clearly show that the check was never accepted, and appellants' contention that it was is without merit.

Affirmed.

HATHAWAY and BIRDSALL, JJ., concur.