NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

DEREK S., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, J.B., *Appellees*.

No. 1 CA-JV 20-0185
FILED 12-10-2020

Appeal from the Superior Court in Yavapai County
No. P1300JD201800019
The Honorable Anna C. Young, Judge

**AFFIRMED**

COUNSEL

Law Office of Florence M. Bruemmer, P.C., Anthem
By Florence M. Bruemmer
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Thomas Jose
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Maria Elena Cruz delivered the decision of the Court, in which Presiding Judge James B. Morse Jr. and Judge Paul J. McMurdie joined.

---

**C R U Z**, Judge:

¶1 Derek S. ("Father") appeals the superior court's order terminating his parental rights to his son, J.B. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2 In 2017, Father was sentenced to 2.5 years of incarceration for child abuse after having sex with J.B.'s mother, a minor. In March 2018, the Department of Child Safety ("DCS") filed a dependency petition concerning J.B. after his mother engaged in domestic violence and self-harming behaviors. The petition alleged Father was neglecting J.B. due to his incarceration and failing to protect him from his mother's neglect.

¶3 The superior court later adjudicated J.B. dependent and set a case plan for family reunification. The court ordered DCS to provide Father services upon his release from prison, including psychiatric, psychological, and psychosexual evaluations, an intake at a behavioral-health clinic, individual counseling, and parenting classes. The court also ordered Father to partake in any services available in prison and comply with the terms of his release. However, Father did not participate in services in prison or make any effort to contact J.B. Further, when released from prison in September 2018, he did not maintain contact with DCS, attend court hearings, or participate in services for sixteen months. In October 2019, the court changed the case plan to guardianship.

¶4 Through January 2020, DCS attempted to locate Father, but his whereabouts remained unknown. Finally, on January 28, 2020, Father appeared at the initial guardianship hearing and contested the proposed guardianship.

¶5 In March 2020, Father established the paternity of J.B. and completed initial hair and urinalysis tests. At a hearing that same month, the court ordered DCS to provide Father with continued urinalysis testing but denied Father's request for visits with J.B. The court also ordered Father

2

to enroll in a behavioral-health clinic, individual counseling, and parenting classes. Father did not participate in any further services. Although he told DCS that he began counseling, he provided no verification.

¶6    In April 2020, after J.B.'s mother continued to engage in domestic violence, the superior court granted DCS's request to withdraw its guardianship motion. DCS then moved to terminate Father's rights under the abandonment and nine-month and fifteen-month grounds. The next month, Father failed to appear at the initial termination adjudication hearing. The superior court found Father lacked good cause for his absence and took evidence on the termination motion. At the end of the hearing, the court made findings consistent with the termination of Father's parental rights and ordered DCS to submit a proposed order. Two days later, Father moved for a finding that he had established excusable neglect. The court then issued a final order terminating Father's parental rights on the grounds alleged. Father timely appealed the termination order. After the termination order issued, DCS and the child's guardian ad litem objected to Father's motion, and the court later issued a signed order denying it.

## DISCUSSION

¶7    On appeal, Father argues he demonstrated good cause for his failure to appear at the initial termination adjudication hearing. DCS argues this court lacks jurisdiction to consider Father's argument because he filed a notice of appeal only from the order terminating his parental rights and not from the subsequent denial of his motion to set aside the termination order. We agree. *See Lindsey v. Dempsey*, 153 Ariz. 230, 235 (App. 1987) ("Since the ruling of which Lindsey complains occurred after the entry of judgment and the filing of the notice of appeal, we do not have jurisdiction to address it."). Thus, we lack jurisdiction to consider whether the facts alleged in Father's motion to set aside the termination order presented good cause for his failure to appear at the initial termination adjudication hearing or whether he advanced a meritorious defense.

¶8    Although we lack jurisdiction to consider the matter of the denial of the motion to set aside the termination order, we do have jurisdiction to consider whether the superior court abused its discretion by determining, based on the evidence presented at the initial termination adjudication hearing, that there was no good cause for Father's absence and that Father had waived his rights by failing to appear. Further, based on Arizona Revised Statutes ("A.R.S.") section 8-235(A), we also have jurisdiction to review the superior court's decision to terminate Father's parental rights.

**¶9**            Under A.R.S. § 8-537(C), "[i]f a parent does not appear at the pretrial conference, status conference or termination adjudication hearing, the court, after determining that the parent has been instructed as provided in [A.R.S.] § 8-535, may find that the parent has waived the parent's legal rights and is deemed to have admitted the allegations of the petition by the failure to appear." Additionally, Arizona Rule of Procedure for the Juvenile Court 65(C)(6)(c) provides that a "failure to appear may constitute a waiver of rights" if a parent fails to appear at the termination adjudication hearing without good cause shown. When this occurs, the court may terminate parental rights "based upon the record and evidence presented if the moving party or petitioner has proven grounds upon which to terminate parental rights." *Id.*

**¶10**            The record reveals that Father called in to multiple previous hearings before the same court, that the other parties were able to call in to the initial termination adjudication hearing, and that Father failed to contact the court's judicial assistant at any time during the thirty-minute hearing. The record also demonstrates Father had, at least twice, received notice of the consequences of his failure to appear. On this record, we hold the superior court did not abuse its discretion in finding Father had no good cause for his failure to appear at the initial termination adjudication hearing and that Father had waived his parental rights pursuant to A.R.S. § 8-537(C).

**¶11**            Father next argues that the superior court erred in finding that DCS made diligent efforts to provide him with appropriate reunification services. However, Father does not challenge the court's order terminating his parental rights under the abandonment ground. *See Britz v. Kinsvater*, 87 Ariz. 385, 388 (1960) (a party's failure to challenge factual findings concedes their accuracy). When a parent in an abandonment case "forms no custodial, personal, or financial relationship with the child," DCS is not required to provide the parent reunification services. *Toni W. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 61, 65-66, ¶¶ 13-15 (App. 1999) (without an existing parent-child relationship, a parent is not entitled to reunification services under constitutional due process principles). When this court affirms a termination order under one ground, it need not consider the others. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 49, ¶ 14 (App. 2004).

**¶12**            Finally, Father argues the superior court erred in finding that termination was in J.B.'s best interests. In addition to finding a statutory ground for termination, the superior court must also determine what is in the child's best interests by a preponderance of the evidence. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005). Once the court finds a parent unfit

under at least one statutory ground for termination, "the interests of the parent and child diverge," and the court proceeds to balance the unfit parent's "interest in the care and custody of his or her child . . . against the independent and often adverse interests of the child in a safe and stable home life." *Id.* at 286, ¶ 35. "[A] determination of the child's best interest[s] must include a finding as to how the child would benefit from a severance *or* be harmed by the continuation of the relationship." *Maricopa Cnty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990). Courts "must consider the totality of the circumstances existing at the time of the severance determination, including the child's adoptability and the parent's rehabilitation." *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 148, ¶ 1 (2018). Other relevant factors in this determination include whether the current placement is meeting the child's needs, an adoption plan is in place, and the child is adoptable. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 3-4, ¶ 12 (2016).

¶13 At the time of the hearing, J.B. had lived with his kinship placement for 4.5 years. J.B.'s placement was providing him with "stability in a home that does not have . . . exposure to domestic violence, that is able to make sure all of his needs are met and ensure his safety," and the placement planned to adopt him. Moreover, the case manager testified that should his placement disrupt, J.B. was "a bright, lovable young man that would be easily adoptable." Thus, reasonable evidence supports the superior court's best-interests finding.

## CONCLUSION

¶14 For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED: AA