NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

CINDY M.,
*Appellant,*

v.

DEPARTMENT OF CHILD SAFETY, S.M., S.M., C.M.,
*Appellees.*

No. 1 CA-JV 20-0224
FILED 2-2-2021

Appeal from the Superior Court in Maricopa County
No. JD30319
The Honorable David O. Cunanan, Judge

**AFFIRMED**

COUNSEL

Robert D. Rosanelli Attorney at Law, Phoenix
By Robert D. Rosanelli
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Emily M. Strokes
*Counsel for Appellee*

---

## MEMORANDUM DECISION

Judge James B. Morse Jr. delivered the decision of the Court, in which Presiding Judge D. Steven Williams and Judge Jennifer B. Campbell joined.

---

**M O R S E**, Judge:

¶1        Cindy M. ("Mother") appeals the juvenile court's order terminating her parental rights to Sh.M., So.M., and C.M. (collectively "Children"), arguing that the Department of Child Safety ("DCS") failed to provide appropriate reunification services.  We affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2        "We view the facts in the light most favorable to upholding the juvenile court's order." *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010) (citation omitted).

¶3        In 2018, DCS received three reports that Christian D. was abusing Mother.  The abuse included breaking Mother's finger, "imped[ing] [Mother's] breathing," striking Mother while she held C.M. in her arms, and injuring Mother by pushing her to the ground.  DCS removed the Children from the home and initiated dependency proceedings as to Mother.  The juvenile court found the Children dependent and set a case plan for family reunification.

¶4        DCS referred Mother for several services to help her understand the toll domestic violence was having on her Children and to help her break away from her abuser.  Specifically, DCS offered Mother domestic-violence counseling, individual counseling, psychological evaluations, and attachment therapy.[1]  Mother engaged in some of these programs, but became pregnant with her abuser's child during the course of her domestic-violence counseling.

---

[1]        Mother does not challenge the juvenile court's finding that these services were offered.  *See Britz v. Kinsvater*, 87 Ariz. 385, 388 (1960) ("Inasmuch as the trial court's findings of fact are not themselves challenged by this appeal, we may assume that their accuracy is conceded.").

**¶5** Mother was also referred to parent-aide services, which she successfully completed in early 2019. The parent aide noted, however, that Mother still "did not fully understand the impact domestic violence had on her [C]hildren . . . ." The following month, Mother was referred to parent-aide services for a second time. This time Mother did not complete the program. Mother's new parent aide noted there was "not enough time" to complete Mother's services and added that "scheduling conflicts" made it difficult for Mother to fully engage in her parent-aide programming.

**¶6** DCS ultimately moved to terminate Mother's parental rights to the Children under the fifteen months in an out-of-home placement ground. *See* A.R.S. § 8-533(B)(8)(c). The juvenile court held a three-day trial. The court found that DCS had proven the statutory ground, that the services DCS offered were appropriate, and that termination was in the best interests of the Children. Accordingly, the court terminated Mother's rights. The juvenile court noted that "Mom has been through counseling multiple times" and "that's really the issue." The court further remarked that "[Mother has] had multiple domestic violence relationships, and she has been through counseling on multiple occasions. And none of those have remedied that situation because she keeps on going back to the same types of relationships that caused danger to the [C]hildren."

**¶7** Mother timely appealed, and we have jurisdiction under A.R.S. §§ 8-235(A), 12-120.21(A)(1), and -2101(A).

## DISCUSSION

**¶8** Mother argues the juvenile court erred in finding DCS provided appropriate reunification services because Mother should have been given the opportunity to complete another round of parenting-aide services.[2]

**¶9** The right to custody of one's child is fundamental but not absolute. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248-49, ¶¶ 11-12 (2000). Termination of parental rights is generally not favored and "should be considered only as a last resort." *Maricopa Cnty. Juv. Action No. JS-500274*, 167 Ariz. 1, 4 (1990). We do not reweigh the evidence but "look

---

[2] Given that Mother's brief does not raise any other issue, Mother has waived all other arguments as to the termination of her rights. *See Crystal E. v. Dep't of Child Safety*, 241 Ariz. 576, 578, ¶ 6 (App. 2017) ("[W]e adhere to the policy that it is generally not our role to sua sponte address issues not raised by the appellant.").

only to determine if there is evidence to sustain the court's ruling." *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004).

**¶10** When seeking termination under the fifteen months in an out-of-home placement ground, DCS is required to make a reasonable effort to provide the parent with appropriate reunification services. *See* A.R.S. § 8-533(B)(8)(c). DCS meets this obligation by providing the parent with "the time and opportunity to participate in programs designed to help her become an effective parent." *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994). DCS is only obligated to provide services that have a "reasonable prospect of success." *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 34 (App. 1999).

**¶11** Mother concedes she was offered myriad services but argues DCS did not provide appropriate services because it did not allow her time to complete an additional parent-aide program, as recommended by a psychologist provided by DCS. Mother also points to another psychologist, who recommended that Mother attend parenting classes. She effectively argues that, once a program is recommended in a psychological evaluation, reunification services are per se unreasonable unless the recommended program is offered and completed.

**¶12** But the psychological evaluation on which Mother relies reflected that, even upon completion of the recommended services, Mother was not likely to obtain minimally-acceptable parenting skills. And the record confirms that prediction, as Mother has already completed a parenting-aide program meant to address her issues and showed no improvement. As the juvenile court noted, "[Mother] sometimes talks the talk of domestic violence counseling, but she has not shown that she has actually made those changes to protect her [C]hildren or to change the situation which has brought those [C]hildren into care on multiple occasions."

**¶13** DCS is not obliged "to undertake rehabilitative measures that are futile." *Mary Ellen C.*, 193 Ariz. at 192, ¶ 34. Mother was offered parent-aide services, completed that program, and still failed to remedy the situation that caused the dependency. Mother fails to show why completing one more parenting-aide program would lead to a different result. *See supra* ¶ 5. Accordingly, we affirm the juvenile court's finding that DCS provided reasonable reunification services. As Mother raises no other arguments, we affirm the juvenile court's termination of Mother's parental rights to the Children.

## CONCLUSION

**¶14** For the reasons above, we affirm the juvenile court's termination of Mother's parental rights to the Children.



AMY M. WOOD • Clerk of the Court
FILED:   AA