NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

YGNACIO F., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, M.E., *Appellees.*

No. 1 CA-JV 22-0019
FILED 7-14-2022

Appeal from the Superior Court in Maricopa County
No. JD38788
The Honorable Pamela Hearn Svoboda, Judge

**AFFIRMED**

COUNSEL

Law Office of H. Clark Jones LLC, Mesa
By H. Clark Jones
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Emily M. Stokes
*Counsel for Appellee*

---

## MEMORANDUM DECISION

Presiding Judge Brian Y. Furuya delivered the decision of the Court, in which Judge Jennifer B. Campbell and Judge Paul J. McMurdie joined.

---

**F U R U Y A**, Judge:

**¶1**        Ygnacio F. ("Father") appeals the juvenile court's order terminating his parental rights to his minor child ("Child"). For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

**¶2**        Father and Irene E. ("Mother") are the biological parents of Child (born in 2012).[1] In February 2016, Father pled guilty to second-degree murder and was sentenced to eighteen years' imprisonment with a projected release date in 2033. At the end of 2019, the Department of Child Safety ("DCS") became involved with the family upon learning Mother was homeless, unemployed, and using drugs. In April 2020 and November 2021, Child was adjudicated dependent as to Mother and Father. DCS moved to terminate Father's parental rights to Child under the statutory felony-length-of-incarceration ground. *See* Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(4).

**¶3**        In September 2021, a contested termination trial was initially held. Because dependency findings had yet to be made regarding Father at that time, the court dismissed the motion for termination. After the court found Child dependent as to Father, it set a plan for termination and adoption and scheduled another contested termination hearing in December. At this second trial, the parties agreed to allow the juvenile court to consider evidence presented at the September trial, with the parties free to present additional evidence. After taking the matter under advisement, the court granted DCS' motion and terminated Father's parental rights. Father timely appealed, and we have jurisdiction pursuant to A.R.S. § 8-235(A) and Arizona Rule of Procedure for the Juvenile Court 103(A).

### DISCUSSION

---

[1]        Mother's parental rights to Child were terminated, but she is not a party to this appeal.

¶4        Father argues the court abused its discretion in terminating his parental rights under the felony-length-of-incarceration ground because (1) DCS offered him no reunification services, impeding his contact with Child and (2) failed to consider Child's potential placement with a family-member guardian.

¶5        To terminate a parent's rights, the court must find clear and convincing evidence to support at least one statutory ground for severance. A.R.S. § 8-533(B); Ariz. R.P. Juv. Ct. 66(C). The court must also separately find by a preponderance of the evidence that termination is in the child's best interests—this finding is uncontested by Father on appeal. *Id.* The court may terminate a parent's rights if the parent is convicted of a felony and "the sentence of that parent is of such length that the child will be deprived of a normal home for a period of years." A.R.S. § 8-533(B)(4); *see also Jessie D. v. DCS*, 251 Ariz. 574, 579, ¶ 9 (2021). A "normal home" is a "stable and long-term family environment outside a foster care placement, where another parent or a permanent guardian resides and parents the child, and where the incarcerated parent affirmatively acts to maintain a relationship with the child that contributes to rather than detracts from the child's stable, family environment." *Timothy B. v. DCS*, 252 Ariz. 470, 477, ¶ 27 (2022); *see Jessie D.*, 251 Ariz. at 579, ¶ 9. "We will affirm a termination order unless the juvenile court abuses its discretion or the court's findings are not supported by reasonable evidence." *Timothy B.*, 252 Ariz. at 474, ¶ 14 (citing *Jessie D.*, 251 Ariz. at 579, ¶ 10).

¶6        Under the felony-length-of-incarceration ground, when "an incarcerated parent requests reunification services, . . . and provid[ed] the services will not endanger the child, DCS must make reasonable efforts to provide [reunification] services." *Jessie D.*, 251 Ariz. at 582, ¶ 21. However, these obligations "do[] not free a parent from the need to raise a timely objection if the parent believes services are inadequate." *Shawanee S. v. Ariz. Dep't of Econ. Sec.*, 234 Ariz. 174, 178, ¶ 13 (App. 2014). Objections can be made in a variety of ways at numerous times throughout the dependency and severance process. *See id.* at 178, ¶¶ 13–14 (describing various stages at which parents can object to the adequacy of reunification services). Failure to object to services constitutes a waiver of that objection. *See Bennigno R. v. Ariz. Dep't of Econ. Sec.*, 233 Ariz. 345, 349, ¶ 19 (App. 2013) (noting parent's failure to object to the propriety of services before termination hearing waived the right to challenge them on appeal).

¶7        Here, Father does not point to anywhere in the record that he raised concern with the adequacy of services being offered before the juvenile court. Indeed, the court found in its termination order that Father

had "not challenged the adequacy of the services provided or offered by [DCS]," a finding uncontested by Father. *See Britz v. Kinsvater*, 87 Ariz. 385, 388 (1960) (explaining an appellant concedes the accuracy of the trial court's findings when uncontested on appeal). Therefore, he has waived any argument as to their deficiency on appeal, *see supra* ¶ 6.

¶8        Concerning Father's second argument, we note there is no bright-line rule indicating when a sentence is sufficiently long to deprive a child of a normal home for a period of years; rather, the inquiry is individualized and fact specific. *Jessie D.*, 251 Ariz. at 579, ¶ 9 (citing *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 251–52, ¶ 29 (2000)). The court must consider all relevant factors, including the six *Michael J.* factors. *Id.* As applicable here, the fifth *Michael J.* factor requires the court to consider "the availability of another parent to provide a normal home life." *Michael J.*, 196 Ariz. at 252, ¶ 29. After the court's January 2022 termination order, our supreme court expanded this fifth factor to require the juvenile court's consideration of "the availability of a permanent guardian to provide a normal home life if another parent is unavailable." *Timothy B.*, 252 Ariz. at 270, ¶ 27.

¶9        Here, the court received evidence from DCS that guardianships are generally not recommended for children of Child's age. The ongoing DCS case manager testified that guardianship would be inappropriate in this case given Child would be 21 years old by the time Father was released from prison. Thus, substantial evidence was admitted for the court to allow consideration of the appropriateness of a guardianship option for Child.

¶10        Further, in the same termination order on appeal, the court terminated Mother's parental rights and therefore found neither Mother nor Father were available to reside with and parent Child to provide her a normal life during Father's incarceration. The court also found that while Child was not in adoptive placement at the initial termination hearing in September 2021, she was placed in an adoptive placement shortly thereafter with foster parents who were willing to adopt her as of the second termination hearing in December (and she was otherwise adoptable if such placement fell through). The court later received Child's position on adoption by this family, confirming she wanted "to be adopted by her current foster family." The court then acknowledged Father's previous argument "that he wanted DCS to keep looking for family members as placement." The court found DCS attempted to do so, placing Child with maternal aunt who could not serve as permanent placement. Indeed, Child was "unhappy" with her maternal aunt and uncle, who then gave DCS

"names of other family members," but they too "could not be approved as placement." The court noted DCS had completed a "Seneca search" but that it was unclear whether other family members would be located. Even so, the court noted that "neither parent ha[d] provided family members' names to be assessed." Thus, guardianship was not a viable option and was, in any event, contrary to the best interests of the Child.

¶11        Granted, the court did not address a potential permanent guardianship specifically under the recently expanded fifth factor discussed in *Timothy B. Id.* However, as illustrated above, the record reflects the court received evidence about a permanent guardianship and noted its findings in its best-interests analysis. The court's discussion demonstrates that it sufficiently considered the possibility of a guardianship, and the court's findings in this regard are, again, uncontested by Father. *See Britz*, 87 Ariz. at 388. As such, we find no abuse discretion. *See Jessie D.*, 251 Ariz. at 578–79, ¶¶ 2, 9 (explaining termination "may be appropriate even if some of the *Michael J.* factors do not support the severance of parental rights" and otherwise affirming the juvenile court's termination order despite misapplication of two *Michael J.* factors because "substantial evidence exist[ed] to support termination").

**CONCLUSION**

¶12        For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA