NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

IN RE TERMINATION OF PARENTAL RIGHTS AS TO D.H.

No. 1 CA-JV 24-0124

FILED 04-15-2025

Appeal from the Superior Court in Mohave County
No. S8015JD202300017
The Honorable Aaron M. Demke, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

The Law Offices of Robert I. Casey, Phoenix
By Robert I. Casey
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Amber E. Pershon
*Counsel for Appellee*

**MEMORANDUM DECISION**

Presiding Judge Cynthia J. Bailey delivered the decision of the Court, in which Vice Chief Judge Randall M. Howe and Judge Andrew M. Jacobs joined.

**B A I L E Y**, Judge:

**¶1**        Dyrekus H. ("Father") appeals the termination of his parental rights to his child, D.H., on the statutory grounds of abandonment and nine months' time-in-care.[1]  *See* Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(1), (8)(a). For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

**¶2**        Father is the biological parent of D.H., born in December 2019. Father and Mother lived together in Michigan while Mother was pregnant with D.H.  About a year after D.H. was born, he and Mother moved to Arizona.  Father had minimal contact with Mother and D.H. after they moved.

**¶3**        The Department of Child Safety ("DCS") took custody of D.H. in February 2023, after Mother left him in the care of multiple strangers, admitted she was using drugs, and did not have stable housing or employment.  Soon after, DCS contacted Father and began an Interstate Compact on the Placement of Children ("ICPC") packet, set up virtual visits, and sent Father a letter to the address he provided.  The case manager told Father he needed to provide information on who resided in his home so she could complete the ICPC packet, but Father never responded.  The address Father provided was vacant, and the postal service returned the case manager's certified service letter.

**¶4**        Father did not contact DCS again until June 2023, when he emailed a case aide to ask about the date of the next hearing.  DCS sent him the hearing date, the corresponding Zoom link, and call-in information. Father did not respond or appear at the hearing.  Father also did not attend any visits with D.H. between February 2023 and February 2024 and spoke to him only once when Mother called Father during one of her supervised visits.

**¶5**        In March 2024, DCS moved to terminate Father's parental rights under the abandonment and nine-months' time-in-care grounds.  In February 2024, two days after DCS moved to terminate Mother's parental rights, Father contacted the DCS case manager, seeking visits with D.H. and providing updated contact information.  The case manager called Father

---

[1] The superior court also terminated the parental rights of D.H.'s mother ("Mother").  Mother is not a party to this appeal.

and referred him for virtual visits. She also asked him to participate in individual counseling and parenting classes. Father participated in the virtual visits, but did not complete any individual counseling or parenting classes.

**¶6** The superior court held a contested termination trial in May 2024. At trial, the superior court heard testimony from the DCS case manager, Father, and several other witnesses. After trial, the court terminated Father's parental rights as to D.H. on both alleged grounds. *See* A.R.S. § 8-533(B)(1), (8)(a). The court found DCS made reasonable and diligent efforts to provide Father with appropriate reunification services and found DCS proved by a preponderance of the evidence that termination was in D.H.'s best interests. *See* A.R.S. § 8-533(B).

**¶7** Father timely appealed. We have jurisdiction under A.R.S. §§ 8-235(A), 12-120.21(A)(1), and 12-2101(A)(1).

## DISCUSSION

I. Sufficient evidence supports the superior court's abandonment finding.

**¶8** To justify termination of parental rights, DCS must prove by clear and convincing evidence at least one statutory ground for termination. A.R.S. § 8-537(B); *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005). The court must also find by a preponderance of the evidence that termination is in the child's best interests. *Kent K.*, 210 Ariz. at 284, ¶ 22. The superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004) (citation omitted). We review the court's termination decision for an abuse of discretion and will affirm unless no reasonable evidence supports the court's findings. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004).

**¶9** Father argues the superior court erred by finding sufficient evidence supported the nine-months' time-in-care ground but does not challenge the court's finding that termination was warranted based on abandonment. As DCS correctly asserts, only one statutory ground for termination is required. *See* A.R.S. § 8-533(B) (requiring evidence of "any one of the" statutory grounds enumerated). Father has abandoned and waived any contention that the court erred by terminating his parental rights on the abandonment ground. *See State v. McCall*, 139 Ariz. 147, 163 (1983). Thus, we affirm the court's order based on abandonment.

**¶10** Waiver aside, reasonable evidence supports the superior court's abandonment finding. Here, DCS began an ICPC packet, set up virtual visits, and sent Father a service letter to the address he provided. The case manager's ICPC letter packet was returned to her because the address Father provided was vacant. Father never provided the case manager the information she requested to complete the ICPC packet or an updated address, and he did not participate in virtual visits with D.H. through DCS until one month before trial. The case manager repeatedly attempted to contact Father by email, phone, and certified letter, but he never responded.

**¶11** Father did not reengage with DCS until February 2024, two days after DCS moved to terminate Mother's parental rights and one month before it moved to terminate his parental rights. The case manager told Father about the next court hearing, referred him for virtual visits, and asked him to begin individual counseling and parenting classes. Father only participated in virtual visitation, completing 16 visits with D.H.

**¶12** Thus, substantial evidence supports the superior court's abandonment finding. And because only one statutory ground for termination is required, we decline to address Father's argument as to the nine-months' time-in-care ground.

II. The superior court did not abuse its discretion by concluding termination of Father's parental rights was in D.H's best interests.

**¶13** Once the court finds a parent unfit under at least one statutory ground for termination, "the interests of the parent and child diverge," and the court proceeds to balance the unfit parent's "interest in the care and custody of his or her child . . . against the independent and often adverse interests of the child in a safe and stable home life." *Kent K.*, 210 Ariz. at 286, ¶ 35. "[A] determination of the child's best interest must include a finding as to how the child would benefit from a [termination] *or* be harmed by the continuation of the relationship." *Maricopa Cnty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990) (citations omitted). "[C]ourts must consider the totality of the circumstances existing at the time of the [termination] determination, including the child's adoptability and the parent's rehabilitation." *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 148, ¶ 1 (2018). The court may find a child would benefit from termination if an adoption plan exists or if the child is adoptable. *See id.* at 150, ¶ 13. The court may also find that a child will benefit from the permanency and stability an adoption would provide. *Oscar O.*, 209 Ariz. at 337, ¶ 16; *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 352 (App. 1994). Conversely, the

court may find termination of the parent-child relationship is in the child's best interests if continuing the relationship would harm the child. *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4, ¶ 16 (2016).

**¶14**     Father contends insufficient evidence supports the superior court's finding that termination is in D.H.'s best interests because the superior court did not articulate any harm to D.H. and because the claimed benefit is illusory.  Not so.

**¶15**     First, the superior court did articulate harm to D.H.  The court found continuing the parent-child relationship would harm D.H. because he needs to have "safe and consistent caregivers free from neglect and abandonment."  In other words, continuing the parent-child relationship would subject D.H. to inconsistent and unsafe caregivers who would neglect and likely abandon him.  Reasonable evidence in the record supports the court's finding.  The DCS case manager testified that Father did not participate in services until a termination petition was filed and that for a majority of D.H.'s dependency, Father was unresponsive to DCS's communications.

**¶16**     Second, adoptability is far from an illusory benefit.  And "adoptable" status is enough of an objective benefit to legally support the best interest prong of the termination statute.  *See JS-501904*, 180 Ariz. at 352.  Here, Father does not deny that D.H. is adoptable and thus concedes the accuracy of the superior court's adoptability finding.  *See In re Termination of Parental Rts. as to Z.L.*, 256 Ariz. 138, 143, ¶ 19 (App. 2023) (citing *Britz v. Kinsvater*, 87 Ariz. 385, 388 (1960)).

**¶17**     Because the superior court's findings support the court's best interests determination, the court did not err.  *See, e.g., Aleise H. v. Dep't of Child Safety*, 245 Ariz. 569, 572, ¶ 10 (App. 2018).  And here, each of the findings independently support that determination.

## CONCLUSION

**¶18**     We affirm.

