NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

MARCOS G., BRANDON B., *Appellants,*

*v.*

DEPARTMENT OF CHILD SAFETY, B.G., M.G., *Appellees.*

No. 1 CA-JV 22-0133
FILED 11-10-2022

---

Appeal from the Superior Court in Maricopa County
No. JD40133
The Honorable Todd F. Lang, Judge

**AFFIRMED**

---

COUNSEL

Maricopa County Legal Defender's Office, Phoenix
By Jamie R. Heller
*Counsel for Appellant Marcos G.*

Czop Law Firm PLLC, Higley
By Steven Czop
*Counsel for Appellant Brandon B.*

Arizona Attorney General's Office, Tucson
By Jennifer R. Blum
*Counsel for Appellee Department of Child Safety*

## MEMORANDUM DECISION

Presiding Judge Brian Y. Furuya delivered the decision of the Court, in which Judge Jennifer B. Campbell and Judge Paul J. McMurdie joined.

**F U R U Y A**, Judge:

**¶1**        Marcos G. and Brandon B., biological fathers, appeal from an order terminating their parental rights to minor children M.G. and B.G., respectively.[1] For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

**¶2**        After receiving an emergency custody order on October 28, 2020, the Department of Child Safety ("DCS") took B.G. into custody on November 2, 2020, filed a dependency petition on November 4, 2020, took M.G. into custody on December 11, 2020, and moved to terminate both fathers' parental rights on December 7, 2021.[2] The juvenile court held a termination hearing on May 2, 2022.

### I.        Marcos G.

**¶3**        Marcos G., father of M.G., has a long history of substance abuse, beginning when he was 15 and continuing through the day of the termination trial, as he admitted to using Fentanyl that morning. He has conceded that his substance abuse impedes his ability to care for M.G. and that it has caused him to "leav[e] stuff around that shouldn't be around." At times during the dependency proceedings, he also struggled with homelessness, mental health issues, and he once attempted suicide.

---

[1]        Both Children share the same mother, who is not a party to this appeal.

[2]        The juvenile court relied on an erroneous entry in Garcia's Exhibit 2 saying M.G. was taken into DCS custody on February 11, 2020, but the rest of the record indicates he was taken into DCS custody on December 11, 2020. *See* Garcia's Exhibit 2 at 4; 3 at 2, 4; 4 at 2, 5; 5 at 2, 5; 6 at 2, 5. Either date satisfies the nine-months' time-in-care grounds that form part of the basis of this appeal.

¶4          Marcos G. was referred for drug testing, substance-abuse assessment and treatment through TERROS, supervised visitation, and mental health assessment and services, provided he first demonstrated 30 days of sobriety. However, he never demonstrated the requisite period of sobriety, failed to participate in TERROS services beyond initial screenings, only took two drug tests, and tested positive for cocaine in July of 2021. He was also unable to conduct many visits with M.G., partly due to his work schedule and homelessness.

¶5          At the termination hearing, an assigned DCS caseworker testified that Marcos G. could not reunify with M.G. because he was not sober, had not addressed his mental health issues, and had only recently obtained housing through family members. The court found this testimony credible.

## II.     Brandon B.

¶6          Brandon B., father of B.G., testified at the termination hearing that he was on Seriously Mentally Ill ("SMI") probation and has "anger issues and . . . ADHD," and "emotional regulation issues" regarding parenting of B.G. His probation began in 2019 after a domestic violence incident involving Marcos G. and M.G.'s and B.G.'s mother, and he demonstrated anger and behavioral issues throughout the proceedings. He refused to provide a urinalysis sample in front of another person, threatened to assault testing staff and kill the DCS case worker, and has made other violent threats. He was also convicted of solicitation to commit abduction from a state agency after abducting B.G. from her grandfather's home. The grandfather later reported B.G. had nightmares about the kidnapping and Brandon B.'s subsequent arrest.

¶7          Brandon B. was referred to TERROS for assessment and treatment, PSI testing, psychological consult and evaluation, supervised visitation, Family Connections services, parent aide services, case management services, domestic violence counseling at SAGE, and transportation services. He tested positive for methamphetamine and amphetamine in early 2021, did not participate in TERROS assessment or treatment, did not test at PSI after July of 2021, missed four psychological evaluations because they were in the morning, missed SAGE domestic violence sessions, and had conflicts with the SAGE staff. He has also admitted grabbing B.G. and leaving bruises on her arms.

¶8          At trial, the assigned DCS caseworker testified that Brandon B. could not reunify with B.G. because of ongoing substance abuse, lack of

stable housing, and untreated "significant" mental health issues. The court found this testimony credible and noted Brandon B. had not provided credible evidence of financial support for B.G.

### III. Grounds for Termination and Jurisdiction.

**¶9** On May 13, 2022, the court terminated both fathers' parental rights based on the nine-months' time-in-care ground and finding termination was in the children's best interests. The court also terminated Marcos G.'s parental rights on an alternative ground of abandonment.

**¶10** Both fathers timely appealed, and we have jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") §§ 8-235(A), 12-120.21(A), and 12-2101(A).

### DISCUSSION

### I. Standard of Review.

**¶11** To terminate parental rights, the juvenile court must find clear and convincing evidence that at least one statutory ground articulated in A.R.S. § 8–533(B) has been proven and must find by a preponderance of the evidence that termination is in the best interests of the child. *Kent K. v. Bobby M.*, 210 Ariz. 279, 280 ¶ 1, 288 ¶ 41 (2005). Because the court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts," we will affirm an order terminating parental rights as long as it is supported by reasonable evidence. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93 ¶ 18 (App. 2009) (citation omitted); *see Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 151 ¶ 18 (2018).

### II. Nine-Months' Time-in-Care.

**¶12** The court may terminate parental rights if—despite DCS' diligent reunification efforts—the child has spent at least nine cumulative months in a court-ordered out-of-home placement and "the parent has substantially neglected or willfully refused to remedy the circumstances that cause the child to be in an out-of-home placement."[3] A.R.S. § 8-533(B)(8)(a). Parental rights may be terminated despite "sporadic . . . attempts to remedy" such circumstances. *See Maricopa Cnty. Juv. Action No.*

---

[3] Neither father challenges the court's finding that the children were in an out-of-home placement for nine months or longer, and they have therefore conceded its accuracy. *See Britz v. Kinsvater*, 87 Ariz. 385, 388 (1960).

*JS-501568*, 177 Ariz. 571, 576 (App. 1994). Moreover, DCS need not "provide every conceivable service or . . . ensure that a parent participates in each service it offers." *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994).

¶13        Marcos G. argues that the record does not support the court's findings that DCS made diligent and reasonable efforts to provide appropriate reunification services and that he failed to remedy the circumstances causing M.G.'s placement. However, DCS offered him numerous services, including services intended to help him with his substance abuse and mental health issues. Despite this, he tested positive for cocaine in July of 2021, was never able to participate in mental health services because he did not demonstrate sufficient sobriety, and missed visits with M.G. Marcos G. essentially asks that we reweigh the evidence because DCS did not provide him with a parent support partner, inpatient treatment, housing, or mental health treatment; because for certain periods DCS and TERROS had inaccurate contact information for him; and because the court focused on his lack of success in remedying the placement circumstances instead of his efforts. But we will not disturb the court's findings where, as here, the court relied on reasonable evidence to find DCS offered sufficient services and Marcos G.'s efforts were sporadic, thwarted in large part by his disengagement or inattention, and inadequate. *See Alma S.*, 245 Ariz. at 151 ¶ 18.

¶14        Marcos G. also appeals the court's alternative ground for termination of his parental rights based on the abandonment ground. However, we need not address this argument because we conclude that sufficient evidence supports the court's termination on nine-months' time-in-care ground. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280 ¶ 3 (App. 2002).

¶15        Brandon B. contends the court erred by considering whether he successfully remedied the circumstances causing B.G.'s placement instead of focusing solely on his efforts to remedy the circumstances. However, reasonable evidence supports the court's findings that he failed to put forth enough effort to remedy his mental health, anger, and sobriety issues. He failed to show up for mental health services, missed his psychological evaluations, missed several domestic violence counseling sessions and classes, tested positive for illegal substances, missed most of his urinalyses and oral swabs, and consistently demonstrated anger and threatened violence throughout the proceedings. Brandon B.'s critique invites us to reevaluate the evidence in light of his condition and efforts.

But reasonable evidence supports the court's findings, and we must decline to reweigh that evidence. *See Alma S.*, 245 Ariz. at 151 ¶ 18.

¶16　　　　Brandon B. further argues his efforts to remedy the circumstances causing B.G.'s placement were satisfactory, given his SMI diagnosis, and that he was doing "the best he could." However, since Brandon B. was not found incompetent and the court was aware of his SMI status, it is the province of the juvenile court to determine whether his efforts were sufficient. *See id.* Because reasonable evidence supports the court's findings that his efforts were unsatisfactory, we must again decline to reweigh the evidence. *See id.*

## III.　Best Interests.

¶17　　　　After finding statutory grounds support termination of parental rights, the court must consider whether termination is in the child's best interests under the totality of the circumstances. *Id.* at 149–50 ¶¶ 8–9, 13; A.R.S. § 8-533. "The child's interest in stability and security must be the court's primary concern." *Alma S.*, 245 Ariz. at 150 ¶ 12. The court must find either that the child would benefit from termination of the parent's rights or that the child would be harmed by continuing a relationship with the parent. *Maricopa Cnty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990); *see also Alma S.*, 245 Ariz. at 150 ¶ 13.

¶18　　　　Here, Marcos G. contends the court abused its discretion by failing to make findings concerning the totality of the circumstances regarding him and M.G., and by finding termination was in M.G.'s best interests when he had housing and employment by the date of the termination hearing. However, the court did consider the totality of the circumstances. And it relied on reasonable evidence to find adoption was in both children's best interests. The court found that both children were bonded with their grandfather, he was meeting their needs, they were thriving and enjoying the stability and security from living with him, and they could have a sibling relationship with each other. The court also found maintaining a parent-child relationship would be detrimental to the children because of Marcos G.'s substance abuse and Brandon B.'s mental health and anger issues. We will not disturb the court's findings because the evidence supports them. *See Alma S.*, 245 Ariz. at 151 ¶ 18.

## IV.　Ineffective Assistance of Counsel.

¶19　　　　Brandon B. further seeks reversal of the termination of his parental rights due to ineffective assistance of counsel. To prevail under such an argument, he must prove his counsel was deficient in a specific

manner that caused "fundamental unfairness" or that "shocks the conscience." *See Royce C. v. Dep't of Child Safety*, 252 Ariz. 129, 137–38 ¶¶ 24–25 (App. 2021). Because the right to counsel in termination proceedings is not constitutional but rather provided by A.R.S. § 8-221, it is not synonymous with the constitutional right to counsel in criminal proceedings. As such, relief because of ineffective assistance of counsel in parental rights cases is "an extraordinary remedy, unavailable in all but the most egregious cases." *Id.* ¶¶ 24–26.

¶20        Here, Brandon B. argues his counsel was ineffective by failing to: "speak on his . . . behalf at the review hearings [and] request . . . accommodations for a client diagnosed as SMI"; "object to reasonable efforts under a nine month time-in-care ground"; inform the court he engaged in services; and "assert [his] bond with B.G." However, Brandon B. failed to specify what additional accommodations his counsel should have requested. Further, the court listed numerous efforts DCS undertook to accommodate Brandon B., in which he failed to engage fully. Our review of the record does not substantiate any egregious deficiencies on the part of Brandon B.'s counsel, that his counsel caused fundamental unfairness, or that his counsel acted in a way that shocks the conscience. Accordingly, Brandon B.'s ineffective assistance of counsel claim fails.

**CONCLUSION**

¶21        For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA