NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO O.L.

No. 1 CA-JV 25-0104
FILED 01-06-2026

---

Appeal from the Superior Court in Yavapai County
No. V1300JD820060038
The Honorable Anna C. Young, Judge

**AFFIRMED**

---

COUNSEL

Law Office of Florence M. Bruemmer, P.C., Anthem
By Florence M. Bruemmer
*Counsel for Appellant/Father*

Arizona Attorney General's Office, Phoenix
By Meredith Oakes Peterson
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Brian Y. Furuya delivered the decision of the Court, in which Presiding Judge Angela K. Paton and Judge Daniel J. Kiley joined.

---

**F U R U Y A**, Judge:

¶1            Richard L. ("Father") appeals the juvenile court's order terminating his parental rights to his child, O.L. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2            O.L. was born in November 2023. Her mother, Rhiannon M. ("Mother"), and Father have a long history of substance abuse and O.L. tested positive for methamphetamine and amphetamine when she was born.

¶3            In November 2023, Father was arrested and incarcerated in Eloy, Arizona, for forgery and possession of drug paraphernalia. Because of both parents' substance abuse and Father's incarceration, the Department of Child Safety ("DCS") took custody of O.L. and her three older siblings and petitioned for a dependency. The children were placed together in their paternal grandmother's home, where they remained during the nineteen-month dependency. The juvenile court eventually adjudicated O.L. dependent as to Father.

¶4            Following his release from incarceration in Eloy, Father was sent to the California Department of Corrections for violating his parole conditions relating to prior convictions. A week later, he was released from the California Department of Corrections on parole. During this release, however, he repeatedly failed to submit to DCS's required substance-abuse testing, and on the four occasions he submitted to testing, he tested positive for marijuana each time and alcohol three of the four times. He also failed to test throughout the entire month of January 2024 and was arrested again in California in February 2024. He was released a month later and contacted DCS and told the case manager that he planned to transfer his parole to Arizona.

¶5            For the next seven months, the case manager repeatedly called and emailed Father and sent him service letters to attempt to arrange services for him, including substance-abuse treatment, substance-abuse

testing, and behavioral health services. But Father did not maintain any communication with the case manager, and he failed to submit the required substance-abuse testing until November 2024. When he returned to Arizona in October 2024, he also failed to notify DCS that he had returned and was living with Mother. He also failed to contact the visitation supervisor to set up visits with O.L. when he was told to do so by the case manager and the visitation referral was closed.

¶6 In November and December 2024, Father submitted to drug tests for DCS and tested positive for amphetamines, methamphetamines, and marijuana on three occasions. Although DCS once more attempted to help Father address his substance abuse and regain custody of O.L. through various services, Father did not participate fully, despite being court-ordered to do so. Father completed an intake for substance-abuse treatment at Arizona Families First but did not otherwise engage in that service. Father also appeared at his appointment for a psychological evaluation but then refused to participate in it. He also completed an intake with Red Rock Family Services in January 2025 for individual and family therapy but failed to participate further in the service. At that intake, Father reported having used drugs as recently as the week before. Father then submitted what purported to be a negative drug test result to DCS in January 2025 from Fastest Labs. But when the case manager attempted to subpoena an official record, Fastest Labs certified they had no records for Father and he had not taken a drug test at their lab.

¶7 In February 2025, DCS moved to terminate Father's parental rights to O.L. under the chronic substance abuse and six- and nine-month out-of-home placement grounds. The following month, the court held a termination hearing for O.L.'s younger sibling and terminated Father's parental rights to him. DCS thereafter amended its termination motion as to O.L. to include the A.R.S. Section 8-533(B)(10) prior-termination ground.

¶8 The court held a contested severance hearing as to O.L. in May 2025. The juvenile court found that DCS had established all grounds for termination as alleged and that termination was in O.L.'s best interests. Father timely appealed. We have jurisdiction under A.R.S. Sections 8-235, 12-120.21, and 12-2101(A)(1).

## DISCUSSION

¶9 To terminate parental rights, a court must find by clear and convincing evidence that at least one statutory ground articulated in A.R.S. Section 8-533(B) has been proven and then must find by a preponderance

of the evidence that termination is in the best interests of the child. *Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 477 ¶ 20 (2023). Because the court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts[,]" this court will affirm an order terminating parental rights so long as it is supported by reasonable evidence. *Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93 ¶ 18 (App. 2009) (citation omitted). We view the facts in the light most favorable to upholding the court's order terminating parental rights. *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549 ¶ 7 (App. 2010).

¶10　　　　Father challenges the juvenile court's findings of the grounds of substance abuse, six- and nine-months' time in out-of-home placement, and prior-termination as statutory grounds for termination, as well as the court's finding that termination was in O.L.'s best interests.

## I. Reasonable Evidence Supports the Court's Termination of Father's Parental Rights Based on the Substance-Abuse Statutory Ground Under A.R.S. Section 8-533(B)(3).

¶11　　　　Father contends reasonable evidence did not support the court's finding that termination was warranted on the substance-abuse ground. The juvenile court may terminate a parent's parental rights when that parent's history of chronic substance abuse renders the parent "unable to discharge parental responsibilities" and reasonable grounds exist "to believe that the condition will continue for a prolonged indeterminate period." A.R.S. § 8-533(B)(3). To order termination on substance-abuse grounds, the "court must also have found that [DCS] had made reasonable efforts to reunify the family or that such efforts would have been futile." *Jennifer G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 450, 453 ¶ 12 (App. 2005).

¶12　　　　Here, Father does not challenge the court's finding that he has a history of chronic substance abuse and thus has conceded its accuracy on appeal. *See Britz v. Kinsvater*, 87 Ariz. 385, 388 (1960). Even so, Father admitted in his behavioral health intake form to having started using methamphetamine over a decade ago at the age of twenty-eight. He repeatedly failed to submit to required testing. And when he did test just before O.L.'s birth, Father repeatedly tested positive for methamphetamine and amphetamine. *See Amanda B. v. Dep't of Child Safety*, No. 1 CA-JV 18-0330, 2019 WL 1349581, at *5 ¶ 22 (Ariz. App. Mar. 26, 2019) (mem. decision) (holding that a court may rely on parent's failure or refusal to comply with drug testing to reasonably infer that parent's drug abuse is ongoing). Reasonable evidence therefore supports the court's finding that Father has a history of chronic substance abuse.

¶13         Father does challenge the sufficiency of evidence to support the court's finding that Father's history of chronic substance abuse renders him unable to discharge parental responsibilities. But the evidence establishes that Father has been in and out of prison for a large portion of O.L.'s life, including for drug-related charges, leaving O.L. without her Father during that time. Further, DCS reported in January 2025—four months before the termination hearing—that Father had "failed to prioritize [his] children's safety over [his] illicit substance use" and that he is "unable to parent appropriately due to [his] use of illicit substances, which could result in severe injury or even death of one or more of the children." DCS also reported that "[d]espite continuous conversations, [Father] is not able to understand the reason for [DCS's] involvement and cannot comprehend how using substance[s] puts the children in an unsafe situation and causes them harm." Father himself testified that he is on a "self-destructive path." Thus, reasonable evidence supports the finding that Father's substance abuse renders him unable to safely discharge his parental responsibilities and we will not disturb it. *Jordan C.*, 223 Ariz. at 93 ¶ 18.

¶14         Father also challenges the court's finding that there are reasonable grounds to believe Father's drug use will continue for a prolonged indeterminate period. However, the record shows that on those occasions Father submitted to testing, he has continued to test positive for substances. In fact, Father tested positive for methamphetamine, amphetamine, or marijuana as recently as November and December 2024. And in January 2025, Father admitted on his behavioral health intake form that he regularly used methamphetamine, hallucinogens, alcohol, and marijuana, and that he had used methamphetamine only "a week ago." He also spurned or failed to follow through with any services DCS offered to help him overcome his substance abuse issues. Taking all inferences from this evidence in the light most favorable to upholding the court's order, *Matthew L.*, 223 Ariz. at 549 ¶ 7, these facts establish reasonable evidence supporting the court's finding that there are reasonable grounds to believe that Father's chronic substance abuse will continue for a prolonged indeterminate period.

¶15         Father argues insufficient evidence supports the court's finding that DCS made the required reasonable rehabilitative efforts. Yet the record shows DCS has repeatedly attempted to provide Father with services, including substance-abuse treatment and testing, to help him overcome his substance-abuse problem. Father refused to participate in treatment and often refused to participate in testing, despite knowing he had been court-ordered to do so and that his parental rights to O.L. could

be terminated if he did not participate. Therefore, reasonable evidence supports the court's finding that DCS made the required reasonable rehabilitative efforts.

**¶16**        Accordingly, reasonable evidence supports the court's termination of Father's parental rights under A.R.S. Section 8-533(B)(3). Because the court did not err in terminating Father's parental rights pursuant to this ground and only one statutory ground is required, we need not address Father's challenges to the other grounds. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280 ¶ 3 (App. 2002) (citations omitted).

## II.        Reasonable Evidence Supports the Court's Finding that Termination Was in O.L.'s Best Interests.

**¶17**        Father claims that insufficient evidence supports the court's finding that termination of his parental rights was in O.L.'s best interests. To terminate a parent's parental rights, in addition to finding at least one statutory ground for termination, the court must also find, by a preponderance of the evidence, that termination is in the child's best interests. A.R.S. § 8-533(B); Ariz. R.P. Juv. Ct. 353(a). We review a best-interests finding for an abuse of discretion and reverse only if "no reasonable evidence" supports the finding. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47 ¶ 8 (App. 2004).

**¶18**        When the child will either benefit from termination or be harmed by continuing the parent-child relationship, termination is in that child's best interests. *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 150 ¶ 13 (2018) (citations omitted). Ultimately, the court's primary concern during the best-interests inquiry is "protecting a child's interest in stability and security." *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4 ¶ 15 (2016) (citation modified). A child may benefit if a current adoptive plan exists, *see Maricopa Cnty. Juv. Action No. JS-500274*, 167 Ariz. 1, 6 (1990), or if DCS can show the child is adoptable, *Alma S.*, 245 Ariz. at 150–51 ¶¶ 13–14. The court may also consider whether the existing placement meets the child's needs and adoption is otherwise legally possible and likely. *Demetrius L.*, 239 Ariz. at 3–4 ¶ 12.

**¶19**        Here, the court found that O.L. would benefit by termination because she is "adoptable" and she was placed with a potential adoptive placement that was meeting her needs by providing permanence and stability. The court also found that O.L. would be harmed if termination was denied because she would remain in care "waiting on parents who are either completely absent from [her life] or have not made any significant

progress towards the behavioral changes necessary for reunification." The court further found that O.L. was "deserving of permanency and [Father has] been given long enough to remedy the issues that render [him] unsafe to parent [her]."

¶20 Father does not challenge any of these findings, except for the finding that he has been given "long enough" to remedy his substance-abuse issue. Therefore, he has conceded their accuracy on appeal. *See Britz*, 87 Ariz. at 388. As to the "long enough" finding, O.L. has been in out-of-home placement for nearly her entire life. And despite having nearly two years in which to address his substance abuse issues, Father failed to do so in any meaningful way. Though Father may see things differently, his and O.L.'s interests are divergent and the court's focus at this point must treat O.L.'s interests as paramount. *Alma S.*, 245 Ariz. at 155 ¶ 36 (Bolick, J., concurring).

¶21 Further, each finding would support the court's best-interests determination independently, and each is supported by the evidence. Therefore, Father has shown no abuse of discretion in the findings that O.L. would benefit by termination and would be harmed if termination was denied. *See Aleise H. v. Dep't of Child Safety*, 245 Ariz. 569, 572 ¶ 10 (holding that the court's findings support the best interests independently and are supported by trial evidence and therefore the mother showed no error).

¶22 Because the court's findings are supported by reasonable evidence and support the conclusion that termination was in O.L.'s best interests, we affirm the order terminating Father's parental rights.

## CONCLUSION

¶23 We affirm.

